Board of Education v. Roehr.

## BOARD OF EDUCATION
## v.
## LEONARD ROEHR AND DANIEL DUGGAN.

*Public Schools—Unauthorized Contract to Build School House—Powers of Board of Education—Secs. 48 and 80, Chap. 122, R. S.—Evidence.*

1.   Where a school district has become organized under Sec. 80, Chap. 122. R. S., the Board of Education has no power to enter into a contract for the erection of a school house without a petition of a majority of the voters of the district.

2.   The Board of Education is not vested with the powers previously exercised by the School Directors, the powers of both bodies being precisely defined and limited by the statute.

3.   Even if this court could consider original evidence, the petition in the case presented is insufficient to show that a majority of the voters of the district desired a new school house.

[Opinion filed November 9, 1887.]

APPEAL from the Superior Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

Mr. WILLIAM PRESCOTT, for appellant.

Messrs. FRENCH & MAY and F. McWINNIE, for appellees.

Where officers of a municipal corporation prevent a person employed by the corporation from performing services, recovery may be had on the contract. Town of Mt. Vernon v. Patton, 94 Ill. 65.

In the making and construing of a contract a fair and reasonable interpretation of the words and acts of the parties will be held to govern. Wilson v. Marlow, 66 Ill. 385; Wells v. Carpenter, 65 Ill. 447; Crabtree v. Hagenbaugh, 25 Ill. 233.

School Directors may, when authorized by vote of the people, purchase a site and build a school house. Sec. 49, Ch. 122, R. S. Notice of such election is sufficient if objects are clearly expressed. Merritt v. Farris, 22 Ill. 303. It need not specify particular site. People v. Sisson, 98 Ill. 335. An election can not be impeached as illegal by one who participated therein. Frick v. Trustees of Schools, 99 Ill. 167.

The question is, was the election lawfully held and the result declared by the proper authority? The appellants were lawfully authorized to call said election, canvass the vote and declare the result, and we produce their own record to show their acts. Board of Education v. Taft, 7 Ill. App. 571, 578; Bolton v. Board of Education, 1 Ill. App. 193.

When the act done is within the corporate power, and might have been lawfully accomplished had the authorities proceeded according to law, the corporation will be liable for the acts of its officers and servants proceeding contrary to law or in an irregular manner. Howell v. City of Buffalo, 15 N. Y. 512; Allen v. City of Decatur, 23 Ill. 332; City of Chicago v. Turner, 80 Ill. 418.

BAILEY, J. This was a suit in assumpsit brought by Leonard Roehr and Daniel Duggan against the Board of Education of District 1, Township 37, Range 15, in Cook County, to recover damages for the breach of a contract for building a school house for said school district. Prior to the date at which said contract is claimed to have been made, said school

district had become organized under the provisions of Section 80, of Chapter 122, of the Revised Statutes. It appears that on the 20th day of August, 1883, said Board of Education, having previously invited bids for the erection of a school house within said district, met to open said bids and award the contract for building the school house, and that said bids having been opened it was found that the plaintiffs' bid was the lowest, viz., $6,250, and a vote was then taken by which the plaintiffs were declared the contractors of said school house, and they were required to schedule their property and furnish a bond in twice the cost of the building. A time was then fixed for a further meeting of the Board three or four days later, at which a contract in writing was to be prepared, the plaintiffs' schedule of their property presented, and their bond executed and delivered.

On the same day on which said bids were opened and the contract awarded, a writ of injunction was sued out of the Circuit Court of Cook County, directed to the members of said Board of Education and their treasurer, restraining them from proceeding further with the erection of said building, and it appears that said writ was served on one member of said Board on that day, and on all the other defendants except said treasurer, on 23d day of August, 1883, and on said treasurer on the following day.

At the next subsequent meeting of the Board the plaintiffs attended, prepared to execute their bond, but were informed of the service of the injunction writ, and told that they need not file their bond then; but the evidence tends to show that they were advised by the Board that the injunction would soon be dissolved, and requested to hold themselves in readiness to proceed with their contract whenever that should be done. It appears that matters remained in that situation for several weeks, both parties anticipating an early dissolution of the injunction, but as the injunction was not dissolved, the project of erecting said school house was finally abandoned by the Board.

The plaintiffs claim, however, that, acting on the faith of their contract, and upon the request of the Board, they pro-

ceeded to purchase a large amount of materials for said building and employed and retained various laborers and mechanics for the work, and also devoted a large amount of their own time to the matter of said building, and that by reason of not being permitted to proceed with the performance of their contract, they were subjected to great losses in respect to said materials and labor and were deprived of the profits which they would have made. The case was submitted to a jury for trial, who found the issues for the plaintiffs and assessed their damages at $902, and for that sum and costs the court, after denying the defendant's motion for a new trial, gave judgment in favor of the plaintiffs.

A number of grounds for the reversal of the judgment are urged by counsel for the defendant, but there is only one of them which we deem it necessary to consider. Section 80, Chapter 122, of the Revised Statutes, under which the defendant was organized at the time the alleged contract was made, provides that in all school districts having a population of not less than 2,000 inhabitants, and not governed by any special act in relation to free schools, there shall be elected, instead of the Directors provided by law in other districts, a Board of Education, to consist of six members, and three additional members for every 10,000 inhabitants, to be elected in the manner prescribed for the election of School Directors. Said section further provides that such Board shall have power, and it shall be their duty, in addition to or inclusive of the powers and duties of School Directors, " to levy a tax annually upon the taxable property of the district, in the manner provided by section 44 of this act, for the purpose of supporting and maintaining free schools in accordance with the powers herein conferred: *Provided*, that it shall not be lawful for such Board of Education to purchase or locate a school house site, to purchase, build or move a school house, or levy a tax to extend schools beyond the period of ten months in each year, except upon petition of a majority of the voters of the district."

The language of the foregoing provision is plain and unambiguous. It is made unlawful for a Board of Education to build a school house except upon petition of a majority of the

voters of the district.   Its power to build being thus limited, it follows, necessarily, that its power to employ others to build school houses is subject to the same limitation.

○ It can not be pretended that the present record discloses any petition of a majority of the voters of the district for the building of the school house in question.   A certain paper to which a considerable number of names are subscribed, was produced and read in evidence, but so far from being a petition for building a school house on the site contemplated by the plaintiffs' contract, it seems to be a protest against building it there, and a petition for building a school house upon an entirely different site.   It is claimed, however, that the paper has been mutilated and that it really is a petition in favor of building the school house in question, and to establish this proposition to our satisfaction, counsel have embodied the original document in their transcript of the bill of exceptions, and in that manner have brought it here for our inspection.   As we do not try causes upon original evidence in this court, we are obliged to take the papers as they read, precisely as we would if we had before us only a copy made and certified by the clerk of the court below.   But even if we could consider said document in the light of original evidence, we would be unable to say that it established the plaintiffs' theory.   As it reads, it is a remonstrance rather than a petition, and there is nothing upon it from which we can say, with any degree of certainty, that it is not in the condition in which it was when the signatures were appended to it.

But even if said paper could be regarded as a petition for building said school house, the plaintiffs' case would not be materially strengthened.   There was no attempt to prove the genuineness of the signatures, or that the persons whose names are subscribed thereto were voters of the district, or that they constituted a majority of said voters.   There is, therefore, a clear defect of proof.

But it is argued that power to build a school house without a petition may be derived from the provisions of Section 48 of the School Law.   That section prescribes the powers and duties of School Directors, and provides as follows:   "It shall not be lawful for a Board of Directors to purchase or locate a

school house site, or to purchase, build or move a school house or to levy a tax to extend schools beyond nine months, without a vote of the people at an election called and conducted as required in the forty-second section of this Act; a majority of the votes cast shall be necessary to authorize the Directors to act." It seems to be argued that because the Board of Education is the successor of the Board of Directors, it possesses all the powers of the latter, and may act in any case where the Directors might have acted. In this view we are unable to concur. The powers of both these bodies are precisely defined and limited by statute, and to hold that the Board of Education may build a school house upon the authority of a vote of the electors of the district at an election held as provided in section 48, without any petition, as the Board of Directors might have done, would be directly in the teeth of the statute which expressly declares that the Board of Education shall not build a school house without a petition of a majority of the voters of the district.

But we think it is a mistake to suppose that the statute, in terms, vests the Board of Education with the powers previously exercised by the School Directors. We find no such provision in section 80. That section, in enumerating and granting the powers of the Board of Education, declares that such Board shall have power, "in addition to or inclusive" of the powers of School Directors, to do the acts enumerated in the specifications which follow. This, we think, means that such Board shall have the powers there enumerated, whether they are included in or are additional to the powers previously exercised by School Directors. The powers, however, of the Board of Education, and the mode in which it may exercise those powers, are to be derived from section 80, and not from section 48.

In the absence of a petition as prescribed by the statute, the Board of Education in this case had no power to enter into the contract sued on, and such contract was void and was in no way obligatory on the school district. It follows that the verdict and judgment are unsupported by the evidence, and the judgment will therefore be reversed and the cause remanded.

*Judgment reversed.*