### Board of Education v. Christopher C. Stotlar.

1.   BOARDS OF EDUCATION—*Power to Dismiss and Remove Teachers.*— A board of education has the power under the statute to dismiss and remove any teacher, whenever, in its opinion, such teacher is not qualified to teach, or whenever from any cause the interests of the school may require such removal or dismissal.

2.   SAME—*Discretion in Dismissing or Removing Teachers.*—The fact as to whether a board of education has acted wisely in dismissing a teacher, is a matter into which the Appellate Court can not inquire.

3.   STATUTES—*Construction—Ejusdem Generis.*—The rule of *ejusdem*

*generis* is a mere rule of construction and can not override the intention of the legislature where that intention is otherwise plainly expressed.

4. WORDS AND PHRASES—*The Words "Removal" and "Dismissal" as Used in the School Law.*—As used in the school law the word "removal" implies some dereliction of duty, and the word "dismissal" means termination, from whatever cause.

5. EVIDENCE—*Matters Contained in an Offer of Proof.*—Matter contained in an offer of proof is not evidence of the existence of such matter, and the court will not presume that such matter exists as recited in the offer.

Assumpsit, on a teacher's contract. Appeal from the Circuit Court of Jackson County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the February term, 1901. Reversed and remanded. Mr. Justice Worthington, dissenting. Opinion filed March 11, 1901.

WILLIAM A. SCHWARTZ and ANDREW S. CALDWELL, attorneys for appellant.

YOUNGBLOOD & BARR, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

This is an appeal from a judgment for $640, in favor of appellee, against appellant, on an alleged contract between the parties, by virtue of which appellee claims he was hired by appellant to act as superintendent of the schools for the year 1898-99, being a term of eight months, at the rate of $80 per month.

The city of Carbondale and other territory comprises the school district. On the 9th day of May, 1898, appellee made an application to the Board of Education, stating that if his work had been satisfactory for the past year, he would be pleased to have the same position for the ensuing year. On the 16th day of May the board met; the minutes of the meeting show that the school year was to commence on the 1st day of September, 1898, and to continue for eight months, and that appellee and some other teachers were declared elected. The minutes of the meeting fail to show that a "yea" and "nay" vote was taken on the subject of employing teachers. Neither do the minutes show what the compensation of appellee was to be, either by the month or year. Appellee's wife was a member of the Board of

Education, and after the meeting had been in session for some time, appellee came to the door and called for his wife. The president of the board told him to come in; that he had been re-elected, or that he was "all right," the witnesses differing as to the precise language used. The evidence shows that appellee said in reply, "all right," or that he was grateful; some of the members of the board, however, testify they did not hear appellee say anything. The meeting adjourned to May 26th, to complete the corps of teachers. At the meeting of the board May 26th, a resolution was introduced declaring the inexpediency of hiring teachers who were related to members of the board; this resolution was carried, and the action of the board, declaring certain teachers, including appellee, to have been re-elected at the former meeting, was rescinded by the resolution. Under the resolution it was assumed by appellant that appellee's contract to teach was canceled. When the school opened, September 1, 1898, appellee went to the school house and offered to perform the services for which he claimed to have been hired, and was told that his services were not needed. He tried to get another school, but was unable to do so, and the evidence fails to show that he earned anything during the school year.

It is contended by appellant, first, that there was no legal contract of hiring, because a " yea and nay " vote was not taken and entered on the record, and because the amount of wages was not fixed by the board; and second, if there was a legal contract of hiring, the Board of Education, by virtue of clause 12 of sub-section 10, of section 166, of chapter 122, Hurd's Revised Statutes of 1899 (Laws of Ill., 1889, p. 305), had unlimited and discretionary power to dismiss appellee, without consequent liability of the school district. In the view we take of the case, it will be unnecessary to determine the first contention.

As to the second contention, sub-section 10 of said section 166, provides:

" The Board of Education shall have all the powers of the school directors, and in addition thereto, and inclusive thereof, they shall have the power and it shall be their duty

* * * Twelfth—To dismiss and remove any teacher, whenever, in their opinion, he or she is not qualified to teach, or whenever, from any cause, the interest of the school may, in their opinion, require such removal or dismissal."

Clause 3 of section 147 of said chapter 122, defining the power of school directors, provides:

" They shall have power to dismiss a teacher for incompetency, cruelty, negligence, immorality, or other sufficient cause."

It is contended on behalf of appellee that the general language contained in the power given to boards of education is to be limited by the more specific language of the power contained in said clause 3, so that removal or dismissal can only be made for some sufficient cause, as negligence, cruelty, etc. To sustain this position, appeal is made to the case In re Swigert, 119 Ill. 83; but the rule of *ejusdem generis* is a mere rule of construction that can not override the intention of the legislature, if the intention is otherwise plainly expressed. That there is a plain intention not to be governed by any such rule of construction is evident from a number of considerations, both from the course of legislation and from internal evidence contained in the provisions above quoted. In Board of Education v. Roehr, 23 Ill. App. 629, the court, in construing the law as it then stood with reference to the powers of directors and boards of education, as measured by a section for which present section 166 is a substitute, since that decision, determined that the powers of the respective bodies were distinctly enumerated by the statute, and that boards of education took no power given to school directors. With that decision in view, the legislature in 1899 made a radical change in the section for which section 166 now stands. If the contention of appellee is correct, that the dismissal must be for some cause enumerated in clause 3, how can clause 12 be said to be a power " in addition"? All causes of dismissal mentioned in clause 3 spring out of the conduct of the teacher himself; the causes for removal and dismissal mentioned in section 166 are made to depend on the opinion of the Board of Education, and to emphasize

such fact, the phrase, "in their opinion," is used twice in the alternatives mentioned in the statutes. When the teacher is dismissed and the reason therefor springs out of his own conduct, and the directors so charge, it is essential that some other person than the contracting parties should be arbiter in the matter; but when the dismissal is dependent on a cause that the Board of Education in "their opinion" may entertain, where is the teacher's remedy in case of a dismissal, at least so long as the board exercises the power in good faith ?

He stands precisely in the position that he would have stood in had he made a contract to teach as long as his services were satisfactory to the Board of Education. School Directors v. Ewington, 26 Ill. App. 379. Clause 12 uses the words "dismissal" and "removal." The word removal implies some personal dereliction of duty. Anderson's Law Dictionary, "Removal." The word dismissal means termination, from whatever cause. It is true the word "dismiss" is used in clause 3, but the personal dereliction is specified as the cause of dismissal, thereby limiting the signification of the term. In Massachusetts, under a similar statute, it was held that where a teacher, even without any fault on his part, is dismissed, he can not recover salary for the time he was hired. Knowles v. Boston, 12 Gray, 339; Wood v. Medfield, 123 Mass. 545. It is true the Massachusetts statute contains an express provision that after such dismissal the teacher shall not recover any compensation. That no such provision is found in our statute we deem unimportant, because while the law is, that one of the parties to a contract may wrongfully rescind the same before it is performed, on condition of paying damages, still a contract rightfully rescinded can not subject any one to an action. Whether appellant acted wisely or not in dismissing appellee is a matter this court can not inquire into; that matter must be left to the citizens of the school district.

All that we determine in the present construction of the law is, that if the matters set forth in the resolution passed at the meeting of May 26th are true, this court is unable

to say that the Board of Education was actuated by mere caprice. Whether, if a Board of Education should dismiss a teacher without any cause and through mere caprice, such teacher would have any remedy, will be determined when such a case arises.

The condition of the record in this cause is such that this court can not finally pass on the question presented, because the resolution referred to is contained in an offer of proof, which is not evidence of the existence of the resolution, or the facts therein contained, and to assume that both the resolution and the facts exist as they are recited in the offer of proof, would preclude appellee from controverting the proof offered and cut off his right of cross-examination in reference thereto.

The judgment is reversed and the cause remanded.

MR. JUSTICE WORTHINGTON dissents:

I do not concur in the conclusion that a Board of Education may, at its option, annul a contract with a superintendent of schools, made for a definite period, and dismiss him from employment without specific grounds for dismissal. The statute authorizing the dismissal of teachers, cited in the opinion, is in contravention of the mutual rights of parties contracting, and should not, by construction, be extended beyond its terms.

Webster defines a superintendent to be " one who has the oversight and charge of some place, institution or organization, affairs, etc., with the power of direction." This definition is recognized when superintendence is given by the statute in this State. Hizer v. Town of Rockford, 86 Ill. 328.

Section 1, Hurd's Statutes, Chap. 122, entitled, "An act to maintain a system of free schools," recognizes a State superintendent and defines his duties.

Article 2 provides for the election of a county superintendent of schools and defines his duties.

Paragraph 7 of Sec. 166, authorizes a Board of Education to appoint a superintendent of schools, who may be required to teach.

Superintendents are thus recognized in the school law as separate and distinct from teachers. The qualifying phrase " who may be required to teach " in paragraph 7 *supra*, indicates a distinction between superintendents and teachers.

A board of directors may " dismiss a teacher for incompetency, cruelty, negligence, immorality, or other sufficient cause." Paragraph 3 of Sec. 7.

"A Board of Education may dismiss and remove any teacher whenever, in their opinion, he or she is not qualified to teach, or whenever from any cause the interest of the school may, in their opinion, require such removal or dismissal."

This paragraph occurs in the same section and follows the paragraph which authorizes a board to employ a superintendent. If it was intended that the board should have the same power summarily to dismiss a superintendent as to dismiss a teacher, why was not the power stated in the paragraph which authorized the summary dismissal of a teacher?

Appellee, in the case at bar, had been employed as superintendent the year before at a salary of $80 per month. He applied to the board for re-appointment to the same position. His application was as follows:

" CARBONDALE, May 9, 1898.
To THE BOARD OF EDUCATION, Carbondale, Ill.

GENTLEMEN : If my work for the past year has been satisfactory, I would be pleased to have the same position for the ensuing year.

Respectfully submitted,

· C. C. STOTLAR."

The record of the board introduced in evidence shows a meeting of the Board of Education was held at the office of T. C. McKinney, May 16, 1898. At this meeting the application of appellee was considered and the record shows:

" On motion it was ordered that the schools begin September 1, 1898, and continue eight months. The board, on motion, ordered that nine teachers be employed for the white school and three for the colored. The secretary then read the applications for places in the school, after which the board proceeded to ballot for teachers. As a result of such ballot C. C. Stotlar was declared elected superintendent; Helen Bryden, principal of high school; A. Blanche

Lawrence, assistant, high school; Ella E. Bridges, primary, West side. For East side Jas. H. Patton was elected principal, M. A. Holland, intermediate, Julia A. Watkins, primary."

Appellee came in after the balloting for superintendent and being notified of the result said "All right," and took part in the consideration of what teachers should be employed.

On May 26, 1898, another meeting of the board was held, and the record shows the following proceedings :

"Whereas, it having come to the knowledge of the Board of Education of Carbondale that complaints have been made and strenuous objections urged against the employing of any person as teacher or superintendent in the public schools of Carbondale who is in any way related to any member of the board, and it being the desire of the board to promote the best interest of the school, and to avoid any action that would be prejudicial to the same, or reflect upon the administration of the board, therefore be it

Resolved, that while we hold in highest esteem and appreciation the exemplary character, moral standing, proficiency and ability as teachers, of those who may be included in the meaning of this preamble and resolution, and actuated by the highest sense of duty toward all concerned to the end that the greatest proficiency may be attained in our public schools, the board hereby rescinds its action taken on the 16th instant, in so far as it relates to the election of superintendent and teachers, except Miss Bryden and Miss Bridges, and the colored school for the ensuing year; and that this preamble and resolution, together with the vote of the members of the board for and against the same, be spread upon the records; and that a copy of the same be furnished by the secretary to each applicant who is included in this preamble and resolution as a token of the board's appreciation of their services as teachers."

In view of this testimonial of record, that the board "held in highest esteem and appreciation the exemplary character, moral standing and ability" of appellee, and in the absence of specific statutory authority to annul a contract deliberately made, I conclude that the action of the board in the premises was unwarranted, and that the judgment should be affirmed.