(No. 31523.—

JOHN OSWALD, Appellee, *vs.* THE CIVIL SERVICE COMMIS-SION *et al.*, Appellants.

*Opinion filed September 21, 1950.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (ROBERT J. BURDETT, A. ZOLA GROVES, and JAMES C. MURRAY, all of Chicago, of counsel,) for appellants.

MICHAEL F. RYAN, of Chicago, (RICHARD F. McPART-LIN, JR., of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal from an order of the circuit court of Cook County reversing the findings and decision of the Civil Service Commission, which, in turn, had discharged the appellee from his position as a steamfitter in the classified service of the Department of Public Welfare at the Dixon State Hospital.

The proceedings were based upon the provisions of the Administrative Review Act, (Ill. Rev. Stat. 1949, chap. 110, pars. 264 to 279, incl.,) and the appeal is brought to this court because the State is an interested party.

After his discharge, Oswald filed his complaint, alleging that he started to work at the Dixon State Hospital in August, 1934, and continued his employment until February, 1946, on which date he was suspended and discharged, without just cause, and that on hearing he would be able to establish that fact.

The hearing on his petition was held May 6, 1946, by the trial board appointed by the Civil Service Commission to hear the charges. At that hearing, through his attorney, petitioner filed a motion to quash the charges filed against him. The trial board denied the motion to quash and proceeded to take the testimony of witnesses.

The record and the evidence taken by the trial board disclose that appellee, John Oswald, was charged with striking or otherwise causing Stanley Locklund to fall against a vise on February 5, 1946, resulting in an injury, a cut over his left eye. Locklund was a patient or inmate of the Dixon State Hospital. Oswald was further charged with allowing Locklund to leave his supervision before ascertaining the extent of the injury, and in failing to obtain medical attention for him immediately after the injury occurred.

The facts show that Oswald was a steamfitter at the institution and that Locklund, a patient, was assigned to help him with his work. The incident took place in the basement of the power house at the hospital. There was a work bench in the basement at which Oswald, Locklund, Hollander, (another steamfitter,) Carr, a patient, and one Leo Signor, a patient, who did not testify, were working when the incident occurred.

On the day in question, Oswald sent Locklund to get some pipes and gave him some keys to unlock a tool box

from which they were to be taken. When Locklund returned with the pipes, Oswald asked him for the keys and Locklund replied that he had given them to the steamfitter. Later he remembered that he had put them in the tool box, which became locked when the lid was closed with the keys inside. The steamfitter was compelled to break open the box in order to find the keys inside.

The foregoing facts are not in controversy. Dr. Bruce D. Hart, the psychiatrist at the hospital, testified that he saw Locklund on February 6, 1946, and made a superficial examination of his injury, which consisted of a cut over his left eye, three quarters of an inch long and closed with a stitch. He also testified as to the mental capacity of both Locklund and the witness, Robert Carr. His conclusions were that Locklund had an intelligence quotient of 84, which placed him in the dull normal group, but was not considered a mental defective; that the normal quotient is between 90 and 110. Also, that Robert Carr, the other feeble-minded witness, had an intelligence quotient in the 70's; that he was in the borderline group. It was his conclusion that both witnesses knew the difference between right and wrong, were able to observe the facts and to testify to such facts.

Locklund testified that he was helping Oswald on February 5, 1946, replacing pipes in the hospital; that there was some loud discussion over the misplacing of the keys and when Oswald found out he had caused the keys to be locked up in the tool box, Oswald started beating him up. Specifically he said Oswald hit him near the windpipe and knocked him down; that as he fell he struck the corner of a vise on the workbench and cut his left eye. He further stated that he then went upstairs, put a bandage on his eye and went to the ward. Afterwards Oswald came to the ward and took Locklund to the dispensary.

Robert Carr worked for the other steamfitter, Hollander, and on the stand related facts concerning the inci-

dent about as testified to by Locklund. Carr had been in the institution 21 years and at the Lincoln State Hospital for four years. He was 43 years old.

The version of the incident as told by Oswald was that he was talking to Locklund in a loud voice and Locklund turned to go away and slipped apparently on a pipe fitting. He testified that he was not aware that Locklund had cut his eyebrow on the vise until he was later informed by the fireman. He then went willingly to the ward and took Locklund to the dispensary. He further stated that Locklund did not fall to the floor.

Arthur Hollander, the other steamfitter, on rebuttal testified that he was around the workbench at the vise on the east side; that he heard a lot of loud talking and argument about the keys and when he got turned around, Locklund was getting up off the floor, and he observed that Locklund had a little cut over the left eye, which was bleeding.

On this record, the Civil Service Commission discharged John Oswald from the classified civil service. The case was taken to the circuit court under the Administrative Review Act. On May 10, 1949, that court reversed the findings and decision of the Civil Service Commission and remanded the cause to the commission for the presentation of any additional evidence in support of the charges against appellee that might be brought forth. No additional proof was taken and on January 16, 1950, the final judgment order was entered.

The decision of the trial judge was made a part of the proceedings in the cause. The basis of the opinion was that not only does the record not disclose a case where the evidence is clear and convincing, but, on the contrary, that the finding is manifestly against the weight of the evidence. It was his opinion that the two witnesses, Locklund and Carr, were presumed, as a matter of law, to be incompetent because they were adjudicated as feeble-minded. We

believe that statement does not accurately present the law as stated in the opinions of this court. In *Kelly* v. *People,* 29 Ill. 287, where objection was made that the prosecutrix was not a competent witness by reason of mental imbecility, and that she could not comprehend or duly appreciate the obligation of an oath, it was held that while the witness was of weak intellect, very ignorant, and easily confused, after she became composed, and upon examination by the court, it became very clear she possessed sufficient mind and a sufficient knowledge of the obligations of an oath, and the legal and moral consequences resulting from its violation, to render her a competent witness. In *Champion* v. *McCarthy,* 228 Ill. 87, we held that because a person was weak-minded and unable to transact business, so that a conservator was appointed for him to care for his property, did not, of itself, render incompetent his testimony. (*People* v. *Enright,* 256 Ill. 221.) In *Truttmann* v. *Truttmann,* 328 Ill. 338, where a conservator had been appointed for the witness on a finding of idiocy, the court held that if the witness has the capacity to observe, recollect and communicate, he is competent and his mental deficiency is considered only in so far as it affects the credit to be· given his testimony. In that case it was stated that while the record showed the witness was a mental defective, it did not show such a degree of imbecility as would justify the exclusion of his testimony. The question of admissibility is always one of law for the court and the test is whether or not the feeble-mindedness is such as to make the person untrustworthy as a witness. *Schneiderman* v. *Interstate Transit Lines, Inc.* 394 Ill. 569.

A close examination of the testimony given by Locklund does not disclose any lack of mental capacity which would justify the exclusion of his evidence or cause him to be declared incompetent to testify. While he was committed to the Dixon State Hospital as a feeble-minded

person, we believe he was of sufficient understanding to not only know the difference between right and wrong but to appreciate the effect of testifying under oath.

The evidence of Robert Carr is subject to greater criticism because he testified under cross-examination that he did not understand the nature of an oath. His answers to other questions, both on direct and cross-examination, confirmed the testimony of Locklund and were told in a direct and straightforward manner without confusion. His evidence should stand only for what it is worth.

John Oswald, the appellee, admits the controversy over the lost keys, but denies positively that he struck Locklund and further states that Locklund did not at any time fall to the floor.

Hollander, called as a rebuttal witness, stated that he heard the loud talking and argument over the keys, but did not see anything until he turned around and saw Locklund coming up off the floor.

In hearings of this character under the Administrative Review Act, we have held that the findings of the hearing body must be supported by the evidence. We have also stated that it is not within the province of the court to disturb the findings of fact made by an administrative agency unless manifestly against the evidence. *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301; *Drezner* v. *Civil Service Com.* 398 Ill. 219.

The appellee contends that because a crime was charged here, it must be proved by clear and convincing evidence. We feel there is substantial testimony in this record to support the findings and conclusions of the Civil Service Commission, and that such findings were not against the manifest weight of the evidence.

The judgment of the circuit court of Cook County is, therefore, reversed.

*Judgment reversed.*