James W. Meridith, Plaintiff-Appellant, v. Board of Education of Community Unit School District No. 7, Christian County, Illinois, and John Sanders et al., Defendants-Appellees.

**Gen. No. 10,008.**

Third District.

October 19, 1955.

Rehearing denied November 28, 1955.

Released for publication November 28, 1955.

Raymond P. Barra, and Harold Broverman, both of Taylorville, for appellant.

Hershey & Bliss, of Taylorville, for appellees; Charles E. Bliss, Richard G. Hershey, and Rolland F. Tipsword, all of Taylorville, of counsel.

MR. PRESIDING JUSTICE HIBBS delivered the opinion of the court.

The appellant, James W. Meridith, plaintiff in the trial court, brings this cause by appeal from the Circuit Court of Christian County, heard there under the Administrative Review Act (Ill. Rev. Stat., Chap. 110, Secs. 264–279 [Jones Ill. Stats. Ann. 104.094(1)–104.-094(16)]). The trial court reviewed an administrative decision of the Board of Education of Community Unit School District No. 7 of Christian County dismissing the appellant as a teacher in that school district after a hearing held pursuant to the Teacher Tenure Law

(Ill. Rev. Stat., Chap. 122, Secs. 24—1-24—7 [Jones Ill. Stats. Ann. 123.1124–123.1130]). The hearing was held on April 6, 1954 and the final determination of the Board dismissing the teacher was made on April 9, 1954.

The Board of Education passed a resolution on March 15, 1954 which directed that a notice of dismissal be sent to the appellant as required by the provisions of the Teacher Tenure Law setting forth the reasons for his discharge, which were: (1) His outside activities; and (2) That the best interests of the school required it. Thereupon a notice under that date was mailed and received by the appellant on the following day, March 16th, wherein he was advised that he would be dismissed as a teacher at the close of the then school term because "the best interests of the schools operated by the Board of Education require such dismissal or removal." Thereupon the appellant pursuant to the Teacher Tenure Law (Sec. 24, Chap. 122, Ill. Rev. Stat. 1953) requested and was granted a public hearing, which was held on the date aforementioned, April 6, 1954.

The leading facts in the matter are not in substantial dispute. The district was organized in July 1948 and from that time on Meridith was employed as a teacher in the agricultural department. His duties required him to work twelve months a year, conducting a classroom during the ordinary and customary daily school periods and vocational duties outside of the school periods and outside of the schoolhouse. In this connection the State department of Vocation and Education makes certain requirements of each agricultural teacher and required the appellant to submit certain reports to it concerning his activities outside of school hours. The Stonington School District is made up of one incorporated community and the remainder, about seventy sections, of agricultural lands. Each of the agricultural students was required each year to have a farm project,

either with reference to the growing and raising of grain, or the raising, feeding and care of swine, beef or other activity of like character, all under the supervision and direction of the agricultural teacher. In the event the report of the agricultural teacher to the State department of Vocation and Education met the minimum requirements the District was entitled to a certain "reimbursement" in funds from the State of Illinois. The reports of Meridith to the State department of Vocation and Education show that he was doing vocational work which just met the minimum requirements of the department, although he was receiving the average compensation paid throughout the state to teachers in that branch of instruction.

At the time Meridith was employed or shortly thereafter he engaged on his own behalf in selling seed oats. Gradually from that time on he increased the scope of his nonteacher activities to testing soils, sale of fertilizer, doubled the size of his fertilizer facilities, erected a second building and advertised in a newspaper his business and that he had added new blending equipment for the purpose of blending fertilizer in accordance with orders.

On January 15, 1954 Meridith was before the Board and was asked if he would give up the fertilizer business and teach school, or, if he wanted to resign and go into business. He informed the Board that if he could sell 500 tons of fertilizer that year that he would not teach next year. He refused to state to the Board whether he would give up his outside business. He then stated he didn't think he was getting enough money and that he was doing just what he was getting paid for and no more.

It is contended by the appellant that the causes of his dismissal were remediable and that under such circumstances it was the duty of the Board of Education to give him reasonable warning in writing stating specifically the causes which, if not removed, might result

480

in charges, and the failure of the Board to give such reasonable warning in writing was bad faith on its part.

Sec. 7—16, Chap. 122, Ill. Rev. Stat. 1953 [Jones Ill. Stats. Ann. 123.846] provides under the powers of the Board of Education: "To dismiss and remove any teacher, whenever, in its opinion, he is not qualified to teach, or whenever, in its opinion, the interests of the schools require it, subject, however, to the provisions of Sections 24–2 to 24–7, inclusive." Sec. 24—2 of the same chapter provides: "Any teacher who has been employed in any district as a full-time teacher for a probationary period of two consecutive school terms shall enter upon contractual continued service unless given written notice of dismissal stating the specific reason therefor, by registered mail by the employing board at least sixty days before the end of such period." The section further provides: "This section and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided."

Sec. 24—3, as amended April 17, 1953 provides: "Notwithstanding the entry upon contractual continued service, any teacher may be removed or dismissed for the reasons or causes provided in Sections 6–36 and 7–16, in the manner hereinafter provided." Then follows the procedure to be adopted in case the dismissal results from a decision of the Board to decrease the number of teachers employed or to discontinue some particular type of teaching service. The section further provides: "If the dismissal or removal is for any other reason or cause it shall not become effective until approved by a majority vote of all members of the board upon specific charges and after a hearing, if a hearing is requested in writing by the teacher within ten days after the service of notice as herein provided." It further provides: "Before service of notice of charges on

481

account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The decision of the board as to the existence of reasons or causes for dismissal or removal shall be final unless an appeal to the county superintendent is taken." This same section was again amended on May 9, 1953, whereby the last quotation from the April 17, 1953 amendment was changed so as to read: "Before service of notice of charges on account of causes that may be deemed to be remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The decision of the board as to the existence of reasons or causes for dismissal or removal shall be final unless reviewed as provided in Sec. 24–8 of this Act." Sec. 24—8 of the act [Jones Ill. Stats. Ann. 123.1130(1)] provides in substance that the provision of the Administrative Review Act shall apply and govern all proceedings for the judicial review of final administrative decisions of the school board under Sec. 24—3 of the Article. Under many holdings of the Supreme Court we do hold that the latter amendment to the section, namely on May 9, 1953, being inconsistent and contrary to the amendment adopted on April 17, 1953 concerning the review of the decision of the Board of Education is controlling. (People ex rel. Hines v. Baltimore & O. S. W. R. Co., 366 Ill. 318; People ex rel. Martin v. Village of Oak Park, 372 Ill. 488; People ex rel. Schlaeger v. Mattes, 396 Ill. 348.)

Appellant has taken the position that the causes of his dismissal were remediable and the failure to give written notice is in itself evidence of bad faith. The statute uses the term "may be deemed to be remediable." Sec. 7—14 of Chap. 122 [Jones Ill. Stats. Ann. 123.844] provides: "The board of education has all the powers of school directors as set forth in Article 6, is

subject to the same limitations, and in addition thereto has the powers enumerated in Secs. 7–15 to 7–22, inclusive." A reading of the powers of school directors as set forth in Article 6 and as set forth in Secs. 7—15 to 7—22 [Jones Ill. Stats. Ann. 123.845–123.849(3)] inclusive of Chap. 122 demonstrates the broad, comprehensive, discretionary powers of school directors and boards of education in the management and operation of schools within their jurisdiction. It will be noted that Sec. 24—2 of the Teacher Tenure Law specifically provides: "This section and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher and reductions in salary as hereinafter provided."

In Powell v. Board of Education, 97 Ill. 375, it is said at page 387: "Directors are invested by law with large discretion in all matters pertaining to the management of schools. With the discretionary powers of officers, whether executive or judicial, courts have no rightful authority to interfere unless where there has been such abuse of their discretion as works palpable injustice or injury." To the same effect is McCormick v. Burt, 95 Ill. 263 at page 265. In Board of Education v. Stotlar, 95 Ill. App. 250 the court say at page 254: "When the teacher is dismissed and the reason therefor springs out of his own conduct, and the directors so charge, it is essential that some other person than the contracting parties should be arbiter in the matter; but when the dismissal is dependent on a cause that the Board of Education in 'their opinion' may entertain, where is the teacher's remedy in case of a dismissal, at least so long as the board exercises the power in good faith? . . . Whether appellant acted wisely or not in dismissing appellee is a matter this court can not inquire into; that matter must be left to the citizens of the school district. All that we determine in the present construction of the law is, that if the matters set forth in the resolution passed at the meeting of May 26th are true,

this court is unable to say that the Board of Education was actuated by mere caprice. . . ."

These cases clearly indicate the law on the discretionary power of school directors and boards of education prior to the adoption of the Teacher Tenure Law. So that the purpose and object of the act would not be misconstrued and misapplied, the legislature by Sec. 24—2 specifically provided: "This section and succeeding sections do not modify any existing power of the board except with respect to the procedure of the discharge of a teacher. . . ."

The spirit of the act is plainly indicated, that is to say, the Board of Education or school directors, as the case might be, should retain all of its power, discretionary and otherwise, but afforded a remedy to any teacher under tenure who was discharged in bad faith through caprice or arbitrarily, and spelled out the procedure to be followed in the event the Board of Education or school directors determined that a teacher should be discharged.

Under this construction of the act the determination of whether or not a cause of dismissal is remediable vests discretionary power in the Board of Education, and that has been the holding of the courts since the adoption of the Teacher Tenure Law. In Biehn v. Tess, 340 Ill. App. 140, a superintendent principal, who was also a teacher, was dismissed and he alleged that the cause for his dismissal was remediable and he should have been given an opportunity to remedy the causes; the court there say at page 152: ". . . We agree with defendants that it is within the discretionary power of the board to determine whether the causes for dismissal, under the provisions of Sec. 24–3 of the School Code were remediable. This is a direction to the Board and involved the exercise of judgment. A court of equity does not have the power to override the judgment of the board that the causes were not remediable." In Eveland v. Board of Education of Paris Union

School Dist., 340 Ill. App. 308, the contention was there made by the teacher that the causes of his dismissal were remediable and no notice was served upon him and therefore the proceedings were invalid. This court at page 320 said with reference to such contention: ". . . It is our opinion that the statute gave the Board ample authority to determine in the first instance what causes were or were not remediable, and that the Board was well within its rights in apparently determining, in the first instance, and until a final hearing, that the charges, particularly when considered as a whole, were not remediable."

In Donahoo v. Board of Education, School Dist. No. 303, 346 Ill. App. 241, this court said: "Moreover, it has been repeatedly held by the appellate courts of this state that the Tenure Law, being in derogation of the common law and creating a new liability, should be strictly construed in favor of the board of education." (Citations.)

█ In view of the foregoing we must conclude that the Board was well within its rights in apparently determining, in the first instance, until a final hearing, that the charges, particularly when considered as a whole, were not remediable.

██ In view of the record that was made at the hearing was the trial court justified in holding that the Board of Education in the exercise of its discretionary power was justified in determining that the causes were not remediable? In the first place courts of review, that is to say this court and the trial court, can not under the Administrative Review Act disturb the findings of fact made by the Board and the discretion exercised by it unless manifestly against the weight of the evidence. (Drezner v. Civil Service Commission, 398 Ill. 219; Oswald v. Civil Service Commission, 406 Ill. 506.) In this cause the appellant was not only engaged in an outside business but had increased the same to an extent where he was not only selling seed oats and other seeds but had erected a building for the sale of ferti-

485

lizer and another building, commenced to blend fertilizer, possessed a truck in his business and advertised extensively. When called before the Board of Education on January 15, 1954 and asked if he would give up the fertilizer business and teach school or if he wanted to resign and go into business, he informed the Board if he could sell 500 tons of fertilizer that year he would not teach the following year but refused to give the Board a definite answer on what he was going to do. Furthermore, he told the Board he was doing just what he was getting paid for and no more. He was receiving the average salary of teachers in his class of work but so far as his vocational duties were concerned was doing the minimum amount of work required in order for the Board of Education to receive "reimbursement" from the State of Illinois:

█ It was peculiarly a province of the Board of Education in the exercise of its discretion to determine whether the outside activities of the appellant had progressed to such an extent as to interfere with the performance of his duties as a member of the teaching staff of the educational institutions under its direction. The best interest of the schools of the district is the guiding star of the Board of Education and for the courts to interfere with the exercise of the powers of the Board in that respect is unwarranted assumption of authority and can only be justified in cases where the Board has acted maliciously, capriciously and arbitrarily.

We cannot say that the manifest weight of the evidence shows the causes for his discharge, viz., the best interests of the schools operated by the Board required his dismissal, was remediable, nor can we say that the manifest weight of the evidence shows that the Board acted in bad faith.

The judgment of the Circuit Court of Christian County is affirmed.

*Judgment affirmed.*