BEVERLY GOULD, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF ASHLEY COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 15 OF WASHINGTON COUNTY, Defendant-Appellee.

(No. 75-41;

Fifth District—October 14, 1975.

Drach, Terrell and Deffenbaugh, P. C., of Springfield, for appellant.

George C. Lackey, of Lackey & Lackey, of Centralia, for appellee.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

This is an appeal from the decision of the circuit court of Washington County on administrative review upholding the action of the defendant board of education in dismissing the plaintiff as a tenured teacher.

Plaintiff, a tenured teacher employed by the defendant board of education, commenced her teaching duties for the fall term of 1973 on August 23. On September 6 she told the superintendent that she was ill with a kidney problem and that she was going home and going to bed under doctor's orders until she could be hospitalized. She later entered a St. Louis hospital where it was determined that she did not have a left kidney and that her remaining kidney was abscessed.

On September 18, according to its minutes, the Board acted to hire a substitute teacher to teach kindergarten "until Mrs. Gould is able to return."

On September 21 plaintiff returned home from the hospital but was advised by her doctor that she should rest. On September 26 she suggested to the superintendent that she be given a leave of absence. On October 16 the Board granted her leave until January 14, 1974, its minutes stated: "* * * at which time her physical condition will be reviewed and a decision made as to whether or not she is able to return to work on a full-time basis."

On January 2, 1974, the superintendent suggested that she come back and observe in class before returning to teach. She did not come as an observer until January 16, explaining that she had a sinus condition followed by stomach flu. The record shows that the school was closed for three days during this period because of inclement weather and that there was no school on the 14th, the appointed day she was to return.

On January 15 the superintendent called, at which time plaintiff said she could return, but if the Board felt that she was not able she would take leave until February 1. The Board met on January 15 but did not act on her request for leave. She came as an observer on January 16 and on the following days. On January 18 she asked to return to full-time teaching on January 21. The superintendent asked her to wait for a week. She continued to come as an observer and on January 29 asked to take over full-time on February 4. The superintendent was not in favor of this.

On February 6 plaintiff's doctor signed a note saying that it was all right for her to return. On February 14 or 15 she presented this note to

the superintendent. He still did not think that she should return or meet with the Board though she asked to meet with the Board.

On February 19 the Board met, considered the doctor's note and expressed the opinion that she "is not physically able to return to work and complete the year." Despite this opinion of the Board, it decided that she should be allowed to return to work. The entry in the Board minutes stated: "However, in view of the vagueness of the law, the absence of applicable Board policy on the subject, it was agreed that Mrs. Gould would be allowed to return to work under specific conditions to be explained to her by the superintendent in a conference and also by letter." Also, at this February 19 meeting, the Board adopted a policy "* * * allowing teachers 3 months to recover from temporary disability after which time all claim to the job including tenure status is lost."

The conditions under which she was permitted to return were that she not be absent, that she perform a full day's work and that she perform extra duties like other teachers. The record shows that after her return to teaching on February 19 she met these conditions fully.

On March 20, 1974, the Board adopted a resolution to discharge the plaintiff. On March 27 the plaintiff appeared before the Board with her father and discussed the Board's resolution. On March 28 notice of charges were delivered to the plaintiff. She requested a bill of particulars, which was supplied on April 8. Following a hearing on August 5, the Board took action dismissing her from her employment. The plaintiff filed a complaint for administrative review on December 19, 1974. The order of the Board dismissing her was upheld by the court.

The Board listed several charges, all but two of which were either not sustained by the evidence, were remedial charges about which she had not been given written warning as required by law or were ruled by the court to be not proper charges. The court upheld the action of the Board on two grounds—failure to report to work at the time agreed and her inability to remain alert when she was attending classes as an observer prior to her returning to full-time teaching.

Plaintiff maintains that the Board's action to discharge her was arbitrary and capricious and that by its action on February 19 reinstating her the Board waived any right it might have had to dismiss her for causes which occurred prior to that date. She also asserts that there was misunderstanding about the necessity of her coming as an observer prior to returning to her teaching position, claiming that because of illness she was unable to come during the period between January 2 and January 14. She understood that she must come as an observer after January 14 and before returning to her full-time teaching duties. Whether or not

she should have so understood is not clear. However, we do not consider this point crucial in deciding the case.

■■ In our opinion the real issue in this case is whether or not the Board's action of February 19 reinstating her to her teaching position constituted a waiver of its charge that she did not return to work on the date specified when her leave was granted. The other charge which was upheld, that she dozed in class while attending as an observer, we do not think sufficient to sustain her dismissal. According to the record her dozing in class occurred only while she was attending as an observer following an illness from which she was not fully recovered and in a warm classroom. Furthermore, the record indicates that after returning to her position full-time on February 19 she met all the conditions prescribed for her return, thus indicating that any drowsiness or inattentiveness she may have exhibited during the observing period was remediable.

■■ Did the Board's action of February 19 constitute a waiver of its right to discharge her for failing to return to work on the specified date of January 14? We think it did. Though the Board argues that its action was taken simply to permit her to finish the spring term there is nothing in the record to indicate that the action was so limited. Merely stating, as the Board did in its minutes, that she had lost tenure does not establish the fact. A teacher loses tenure only as a result of proved cause and after due process as provided in the School Code. Furthermore, it is not a settled question—though in our opinion it is now moot—that the Board could have discharged her prior to February 19 and prior to her returning to work. We might add that the policy adopted by the Board on February 19 allowing 3 months in case of leave was not applicable to the plaintiff since it was adopted after her leave had been granted. Assuming, however, that the Board could have terminated her employment for failure to return to work on January 14, we now turn to the question of waiver.

We do not find that cases cited by the defendant board support its contention that it had not waived its right to discharge her. In *Elder v. Board of Education*, 60 Ill.App.2d 56, 208 N.E.2d 423, the Board had established a 3-months policy regarding temporary incapacity providing that a teacher who had not acquired tenure could be discharged. In the instant case the teacher had tenure and the Board did not have a 3-months policy at the time leave was granted to her. *Lester v. Board of Education*, 87 Ill.App.2d 269, 230 N.E.2d 893, is not on point. It held that the Board has a right to relieve a superintendent of his duties and return him to a teaching position since tenure does not attach to the administrative position of superintendent. In *Glover v. Board of Education*,

21 Ill.App.3d 1053, 316 N.E.2d 534, the court held that the Board had a right to discharge a tenured teacher for classroom deficiencies determined to be irremediable. Certainly the Board has this right, but in the instant case there had not been a determination under the law of what was remediable and not remediable and the only charge upheld by the trial court, other than not appearing on the date specified, was that the plaintiff dozed when she came to class as an observer. We have already commented on this.

In *Meridith v. Board of Education*, 7 Ill.App.2d 477, 130 N.E.2d 5, the teacher failed to meet conditions of the Board regarding curtailment of outside business activities which interfered with his teaching time. Following such failure to meet the Board's conditions, it had the right to terminate his employment. In the instant case the plaintiff met all the conditions imposed. In *Yuen v. Board of Education*, 77 Ill.App.2d 353, 222 N.E.2d 570, the defendant contended that because 2 months had elapsed between cause and notice of discharge the Board should be barred from acting. The court held it was not so barred. We do not hold that a period of time may not elapse between cause and notification, but when a teacher is informed that he will be dismissed if specified conditions are not met and the teacher meets these conditions, then the right to discharge is lost.

The defendant school board argues that if its action of February 19 constituted a waiver then school boards would jeopardize their right to discharge by being considerate and permitting a teacher to remain on after deficiencies had been noted. This does not follow. In the instant case conditions were imposed upon the teacher which she had a right to assume were meant to determine whether or not she retained her teaching position. If the Board had not returned her to her teaching position and imposed these conditions it could have moved at any time to make its case for her dismissal.

Section 24—13 of the School Code (Ill. Rev. Stat., ch. 122, par. 24—13) states that "The contractual continued service status of a teacher is not affected by * * * absence caused by temporary illness or temporary incapacity as defined by regulations of the employing board, [or] leave of absence mutually agreed upon between the teacher and the board * * *." Regardless of what the Board may have said at other times and at other meetings, when it agreed to let the plaintiff return because of "the vagueness of the law, the absence of applicable board policy on the subject," it was reasonable for the plaintiff to believe she had not lost her tenure. Furthermore, the Board took occasion after the February 19 meeting to establish a policy regarding leave for illness, a policy which admittedly did not apply to the plaintiff.

■■■ In 18 Ill. L. & Pr. *Estoppel* § 21 (1956) it is stated that "Waiver may be express or implied, as a necessary consequence of conduct inconsistent with an assertion of the retention of a right, and once a waiver is made it is irrevocable and cannot be revived." While we are in sympathy with the problems school boards have in upgrading the quality of teachers and in trying to follow the sometimes uncertain provisions in the law, we do not believe a board should be permitted to establish conditions for retention of a position by a teacher and then move to discharge after the teacher has met the conditions which were imposed. Furthermore, the Board's apprehension about the state of plaintiff's health as expressed at its February 19 board meeting should have been relieved, at least to some extent, by her performance after returning to her teaching position. Also, if the Board felt that plaintiff exhibited irremediable defects in her teaching then it should not have permitted her to be exposed to the students for the rest of the term. The trial court properly ruled that inquiry into the academic record of plaintiff prior to her acquiring certification was improper.

Defendant board cites cases for the proposition that courts are not at liberty to interfere with the school board's discretion absent a showing of arbitrary or malicious action. We agree, but that question is not in issue. The real question is the one we have addressed—namely, did the Board's action of February 19, reinstating the plaintiff, waive previous objections it might have made to her teaching? We hold that it did.

Reversed.

KARNS and CARTER, JJ., concur.