BOARD OF EDUCATION OF FORT MADISON COMMUNITY SCHOOL DISTRICT and Max E. Redmond, Appellees,

v.

James YOUEL, Appellant.

No. 61234.

Supreme Court of Iowa.

Aug. 29, 1979.

Rehearing Denied Oct. 11, 1979.

James L. Sayre, of Dreher, Wilson, Adams & Jensen, Des Moines, for appellant.

R. L. Fehseke, of Fehseke & Fehseke, Fort Madison, and Terry D. Loeschen, of Cray, Walter, Cray & Loeschen, Burlington, for appellees.

Considered by LeGRAND, P. J., and UH-LENHOPP, HARRIS, McCORMICK, and ALLBEE, JJ.

LeGRAND, Justice.

This is the first case arising under § 279.13 et seq., The Code, 1977, which completely revised the procedure for terminating school teachers' contracts. The teacher, James Youel, appeals from a decree affirming the decision of the Board of Education of Fort Madison Community School District terminating his contract. We affirm the trial court. We refer herein to the appellant teacher as Youel and to the appellees as the Board. All statutory references, unless otherwise noted, are to the Code of 1977.

Youel was in his twenty-fifth year of continuous employment with the Board at the time his contract was terminated. He was thus a nonprobationary teacher. § 279.19. Our discussion is restricted to such teachers and does not concern the more limited rights of probationers under that section.

During his tenure, Youel served as football coach, athletic director and mathematics teacher. At the time of the termination, he was no longer athletic director but was still acting as football coach and mathematics teacher.

The procedural steps required for termination of Youel's contract are set forth in §§ 279.15–279.18. It is conceded all of these conditions were met. We set out briefly the manner in which the case reaches us.

The superintendent of the Fort Madison Community School District notified Youel he would recommend to the Board that Youel's contract be terminated at the end of the 1976–77 school year. § 279.15.

Youel then requested a private hearing with the Board and such a hearing was held under the provisions of § 279.16. Following the hearing, the Board filed a written decision, setting out its findings of fact and conclusions of law and terminating the contract. The secretary of the Board immediately notified Youel of the Board's action. § 279.16.

Youel appealed to an adjudicator selected by the process described in § 279.17. The case was submitted to him on the record made before the Board, and he subsequently filed an opinion reversing the Board and ordering Youel's reinstatement.·

The Board rejected the adjudicator's decision and appealed to the district court. § 279.18. The district court reversed the adjudicator and reinstated the original decision of the Board. That decision led to this appeal.

Although the Board, the adjudicator, and the district court all hold hearings, only the Board takes testimony. Both the adjudicator and the district court act on the record made before the Board. The adjudicator may remand to the Board for "further proceedings" (§ 279.17) and the district court may remand to the adjudicator or the Board for "further proceedings." (§ 279.-18).

Although chapter 279 covers the termination of both *teacher* contracts and *adminis-*

*trative* contracts, several significant differences appear. It is important to remember we deal here only with §§ 279.15–.18 under which the Board may terminate teachers' contracts. Thus the quantum of proof required is a preponderance of the competent evidence (§ 279.18(6)). In terminating administrators' contracts the standard is substantial evidence to support the Board. § 279.24(6).

While this does not come to us under Iowa Administrative Procedure Act, the language of chapter 279 and that of the IAPA is quite similar and indeed, in some respects, identical. Cases under the IAPA are therefore helpful in reaching our conclusions here. This is particularly true in considering the scope of review, a matter we now discuss.

I. *Scope of Review*

■ Appeal to this court is authorized by this provision in § 279.18:

An aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court by appeal to the supreme court. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

This is almost identical with the provisions of § 17A.20, The Code, 1977, which delineates the right of appeal under the Iowa Administrative Procedure Act, under which we have discussed the scope of review on a number of occasions. *Jackson County Public Hospital v. Public Employment Relations Board,* 280 N.W.2d 426, 429–30 (Iowa 1979); *Iowa Public Service Co. v. Iowa State Commerce Comm'n,* 263 N.W.2d 766, 768 (Iowa 1978); *Taylor v. Department of Transportation,* 260 N.W.2d 521, 522 (Iowa 1978); *Hoffman v. Iowa Department of Transportation,* 257 N.W.2d 22, 25 (Iowa 1977). *See also Davenport Community School District v. Iowa Civil Rights Comm'n,* 277 N.W.2d 907 (Iowa 1979) and *Davoren v. Iowa Employment Security Comm'n,* 277 N.W.2d 602, 603–04 (Iowa 1979).

These cases establish the rule that a review under the Iowa Administrative Procedure Act is at law. *Jackson County* quotes from *Hoffman* that this court's task is "to review the record in the manner specified in 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8)." 280 N.W.2d at 429. Keeping in mind the analogous language of the IAPA and chapter 279, we paraphrase what was said in these cases to announce the rule that, on appeals in teachers' termination cases, we review the record in the manner specified in § 279.18 and make anew the judicial determinations specified in that section.

One difficulty immediately presents itself. In IAPA appeals of contested cases, the agency's findings need only be supported by substantial evidence. On the contrary, § 279.18 makes it our duty on review to determine if the findings of the Board are supported by a preponderance of the competent evidence. This is *de novo* talk. However, as we pointed out in *Buda v. Fulton,* 261 Iowa 981, 984, 157 N.W.2d 336, 338 (1968), this alone does not make a review *de novo*. A *de novo* review as applied to administrative hearings usually involves the right to introduce additional testimony and to try the case as though it had not been tried originally before the first body to hear it. Here, however, the statute precludes that by mandating the district court shall review the case on the record made before the Board.

Section 279.18 establishes seven grounds upon which the district court—and this court—may grant relief. We set out the applicable part of the statute:

In proceedings for judicial review of the adjudicator's decision, the court shall not hear any further evidence but shall hear the case upon the certified record. . . . The court shall reverse, modify, or grant any other appropriate relief from the board decision or the adjudicator's decision equitable or legal and including declaratory relief if substantial rights of the petitioner have been prejudiced because the action is:

1. In violation of constitutional or statutory provisions; or

2. In excess of the statutory authority of the board or the adjudicator; or

3. In violation of a board rule or policy or contract; or

4. Made upon unlawful procedure; or

5. Affected by other error of law; or

6. Unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when that record is reviewed as a whole; or

7. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

We have already discussed the only one relied on here—that the result is unsupported by a preponderance of the competent evidence. We confine ourselves to this single complaint, noting, however, that these are the criteria for our review.

We now hold an appeal to this court under § 279.18 is at law for the correction of errors under the seven standards there set out.

II. *Burden of Proof*

■ The parties differ sharply on the burden of proof. We are unable to see any serious problem.

The superintendent, of course, had the burden to establish the case against Youel in the first instance. Thereafter Youel, like any other appellant, must demonstrate error. This does not change the burden of proof. It merely places on the one saying the burden was not met the task of pointing out *why* it wasn't.

III. *Just Cause*

■ We should discuss one other matter before getting to the record. It concerns the term "just cause" as used in § 279.15, which provides the notification by the superintendent that he intends to recommend termination of the teacher's contract "shall contain a short and plain statement of the reasons, which shall be for just cause," why the recommendation is given to the board.

The later hearing before the Board is "limited to the specific reasons stated in the superintendent's notice" of recommended termination. § 279.16. The question of the meaning of "just cause" thus becomes of paramount importance.

The statute does not define the term. The predecessor statute (§ 279.24, The Code, 1975) uses "good cause" instead of "just cause." In *Hartman v. Merged Area VI Community College,* 270 N.W.2d 822, 826–27 (Iowa 1978), we discussed good cause as a basis for termination under the 1973 Code. We took special pains *not* to equate good cause under the 1973 Code with just cause under the 1977 Code, reserving that question for another day.

Unlike "good cause" limited by *Hartman v. Merged Area VI Community College,* 270 N.W.2d 822, 826–27 (Iowa 1978) and *Johnston v. Marion Independent School District,* 275 N.W.2d 215, 216 (Iowa 1979), two reasons attributable to the teacher's conduct, "just cause" under section 279.15 encompasses other grounds as well. We pointed this out in *Briggs v. Board of Directors of the Hinton Community School District et al.,* 282 N.W.2d 740, 742 (Iowa 1979), where we said:

The term [just cause] therefore must now include legitimate reasons relating to the district's personnel and budgetary requirements, *see Hagarty v. Dysart-Geneseo Community School District,* 282 N.W.2d 92 (Iowa 1979), as well as faults attributable to the administrator or teacher.

In the present case we are concerned only with those matters dealing with the teacher's faults, and our consideration is limited accordingly.

Cases dealing with this question are countless and varied. We set out first several general observations from other courts.

In *Quick v. Southern Churchman Co.,* 171 Va. 403, 417, 199 S.E. 489, 494–95 (1938):

"[J]ust cause" or "good cause" cannot be reduced to a legal certainty. . . . The grounds upon which it is based must be reasonable, and there should not be an abuse of the conferred right. It must be a fair and honest cause or reason, regulated by good faith on the part of the

party exercising the power. It limits the party to the exercise of good faith, based upon just and fair grounds as distinguished from an arbitrary power.

In *New Mexico State Board of Education v. Stoudt,* 91 N.M. 183, 571 P.2d 1186, 1189 (1977), the court held termination for just cause must be related to the purposes of the legislative enactment including protection of the public against incompetent teachers, assurance of proper educational qualifications, and maintenance of high standards of teaching performance.

The Wyoming Supreme Court, in *Powell v. Board of Trustees,* 550 P.2d 1112, 1119 (Wyo.1976), said that "just cause assumes facts which bear a relationship to the teacher's ability and fitness to teach and discharge the duties of his or her position."

Substantially the same notion was expressed in *Tudor v. University Civil Service Merit Board,* 131 Ill.App.2d 907, 910, 267 N.E.2d 341, 343–44 (1971), where the court defined just cause as "some substantial shortcoming which renders continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place."

While there has been no serious dispute among courts in defining just cause, there are widely varying applications of that definition to particular factual situations. We list a sampling of them.

Cases in which just cause was found *not* to exist include *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (teacher made public comments on school matters); *Gould v. Board of Education of Ashley Community Consolidated School District Number 15,* 32 Ill.App.3d 808, 336 N.E.2d 69 (1975) (teacher dozed off in a class she was attending as an observer); *Wells v. Board of Education of Community Consolidated School District Number 64,* 85 Ill.App.2d 312, 230 N.E.2d 6 (1967) (teacher of mentally handicapped children kept "unsophisticated" and incomplete journals of

the activity of each pupil); *Calhoun v. Cassady,* 534 S.W.2d 806 (Ky.1976) (teacher supported a superintendent's opponent in a school board election); *Harris v. Mechanicville Central School District,* 86 Misc.2d 144, 382 N.Y.S.2d 251 (1976), *modified,* 57 App. Div.2d 231, 394 N.Y.S.2d 302 (1977), *modified,* 45 N.Y.2d 279, 408 N.Y.S.2d 384, 380 N.E.2d 213 (1978) (teacher left a private conference and refused to return despite the principal's order).

The cases in which just cause has been found to exist are just as varied, sometimes on facts quite similar to those which other courts have found to be insufficient. We list a few here. *Brubaker v. Board of Education School District 149,* 502 F.2d 973 (7th Cir. 1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (teacher distributed poem urging students to disregard discipline); *Horton v. Orange County Board of Education,* 464 F.2d 536 (4th Cir. 1972) (teacher committed acts of insubordination); *Gilbertson v. McAlister,* 403 F.Supp. 1 (D.Conn.1975) (teacher refused to obey principal and also distributed controversial leaflets); *Birdwell v. Hazelwood School District,* 352 F.Supp. 613 (E.D.Mo.1972), *aff'd,* 491 F.2d 490 (criticized working relationship between teachers and administration); *Yuen v. Board of Education of School District # U–46,* 77 Ill.App.2d 353, 222 N.E.2d 570 (1966) (violation of school board order by staying away from school); *Knox County Board of Education v. Willis,* 405 S.W.2d 952 (Ky.1966) (lack of control over students); *Simon v. Jefferson Davis Parish School Board,* 289 So.2d 511 (La.App. 1974) (left classroom unattended, neglected to provide lesson plans for substitute teachers, and refused to accept constructive criticism); *Ray v. Minneapolis Board of Education,* 295 Minn. 13, 202 N.W.2d 375 (1972) (teacher refused to fill out evaluation reports); *Pietrunti v. Board of Education of Brick Township,* 128 N.J.Super. 149, 319 A.2d 262, 268 (1974) (teacher gave orientation speech critical of school system to new teachers).

Several cases having analogous facts merit special attention. In *Williams v.*

*Day,* 412 F.Supp. 336 (E.D.Ark.1976), *aff'd,* 553 F.2d 1160 (8th Cir. 1977), a federal civil rights case, the dismissal of a teacher was upheld where the teacher refused to cooperate with the administration after he had failed to get the appointment as athletic director.

It was found that his insubordinate conduct created constant turmoil, undermining the efficiency of the athletic program in which he served as a coach. 412 F.Supp. at 348. Furthermore, he voiced complaints to outsiders about the operation of the athletic program. 553 F.2d at 1161. His lack of cooperation was found to be just cause for termination. Many of these same complaints are made against Youel.

Lack of cooperation was also said to be just cause for termination in *State Tenure Commission v. Madison County Board of Education,* 282 Ala. 658, 213 So.2d 823 (1968), and *School District Number 8, Pinal County v. Superior Court,* 102 Ariz. 478, 433 P.2d 28 (1967).

These cases, based on varying statutes, interpreted by different courts, after findings by dissimilar administrative boards, do little perhaps to resolve the present controversy except to focus attention on the fact that each case must depend on its own peculiar circumstances. Prior decisions do not point the way to any sure or satisfactory result.

With this in mind, we come at last to a consideration of the record here and the trial court's decision.

IV.   *The Record and Conclusions Therefrom*

▇ Under the statutory scheme, the Board alone makes findings of fact, and it is those findings which must be supported by a preponderance of the competent evidence when the record is viewed as a whole. § 279.18(6).

This is only one of the seven grounds which that section makes the bases for relief. It is, however, the only one which Youel seriously raises. If he is to succeed, it must be because the evidence fails the statutory test.

Four reasons for recommending termination were listed in the superintendent's notice to Youel. They are:

1. Inattention to duty.

2. Negative attitude toward and poor working relationship with activities director.

3. Lack of cooperation with activities director.

4. Improper handling of football program resulting in deterioration of program.

The Board was limited to those in deciding Youel's fate. § 279.16. This does not mean each must be considered separately and must itself amount to just cause. It means, rather, that when the record is considered as a whole the proof must show by a preponderance of the evidence that there is just cause for termination on the basis of the reasons stated. For instance, evidence of inattention to duty or lack of cooperation with the activities director (stated as separate reasons for termination) could well be important in deciding if there had been improper handling of the football program (another separately stated reason).

To further circumscribe our conclusions, we find the ground upon which this termination must stand or fall is "improper handling of the football program resulting in deterioration of the program." We believe that is the only basis upon which the Board acted and that is the ground which the trial court found amply supported by a preponderance of the evidence. We do too.

Perhaps this is a good place to discuss Youel's argument that the Board's written findings and conclusions are insufficient under § 279.16, which states in part:

The decision of the board shall be in writing and shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts and supporting the findings. Each conclusion of law shall be supported by cited authority or by reasoned opinion.

We have recently recommended that administrative agencies make findings sufficiently detailed to properly present the issues and their solution. *See Citizens against the Lewis and Clark Landfill v. Pottawattamie County Board of Adjustment,* 277 N.W.2d 921, 925 (Iowa 1979). We believe this is what the statute intended to assure, and we believe, too, this is what the Board did.

Youel insists that the Board's findings were not related to the reasons listed by the superintendent in the original termination notice; but the record belies this. The Board's opinion makes a specific finding that the "Ft. Madison football program has been improperly handled resulting in a deterioration of that program." This was also a specific reason listed in the termination notice. It is also implicit throughout the Board's findings because the termination was expressly limited to reasons arising from Youel's conduct as football coach. He was found to have performed his duties as mathematics teacher beyond serious criticism.

Thus we have mishandling of the football program as a ground in the superintendent's notice to Youel; a specific finding that it *was* mishandled and that the program *had* deteriorated; another specific finding that Youel's conduct as mathematics teacher was satisfactory; and a conclusion his contract should be terminated. It is clear beyond doubt that the Board's action was taken because the football program failed, a breakdown for which it fastened blame on Youel. We are unable to understand how Youel can seriously claim that the Board did not stay within the limits of the superintendent's original complaint or that it did not adequately set out the reasons for its decision.

That still leaves the question whether the record supports the result by a preponderance of the evidence. We have already said it does, and we now set out our reasons.

It must be kept in mind coaching football was an important part of Youel's duties, even though coaching provided only a small increment to his basic teaching salary. In fact the only complaint against his teaching performance was that he was wont—as coaches are—to talk football during class periods and to, sometimes, cut classes short to deal with football-related matters. We point out we do not equate the football program (nor did the Board) with the school's won—lost record. We are talking of the whole program—participation, enthusiasm, student interest, leadership, integration with other school programs, and—unfortunately—economics.

In retrospect the football program was perhaps doomed from the day Youel was replaced by John Nardini as athletic director, a position Youel had held for 23 years. Although Youel says he wanted to be relieved of his position, the record shows he nevertheless resented his successor. Therein, we believe, lay the genesis of our present problem.

Youel's resentment took many forms. He neglected making reports; he postponed submitting roster lists; he was "uncooperative" in reporting injuries and in making certain the required physical exams were scheduled and taken; he spoke out publicly, and sometimes in uncomplimentary terms, against both the superintendent and the athletic director; he made frequent public statements deriding his own players, sometimes individually, sometimes as a team; he refused to comply with suggestions from Nardini and others that he recommended how the football program could be improved; he repeatedly rejected suggestions with the response, "Let Nardini do it" or "Let the administration do it."

In the meantime the football program deteriorated. The number who participated decreased and attendance at games declined. Neither was dramatic, but the decline, however insignificant in itself, came at a time when other sports prospered and gained in popularity and support. The record shows that the football program had reached an impasse.

A job separation is seldom attributable to only one party. In the present case there is evidence to refute many of the conclusions reached. Youel disclaimed responsibility

for any falling off of his program. We have reviewed the whole record, as the statute directs. We have also accorded weight to the Board's findings, as the statute also directs. We hold that on these disputed facts the preponderance is with the Board.

We further hold Youel's conduct as football coach amounted to just cause for termination under the authorities in Division III. The Board was not obliged to continue a situation which was disruptive, was harmful to the school's athletic program, and for which there appeared to be no alternative except to dismiss the one the Board found responsible for the continuing dissension. The fact that Youel may not have been totally responsible for all the ills does not mean his contract cannot be terminated. Faced with a situation in which bickering and bitterness held sway, the Board must have the final say as to how best to bring that intolerable state of affairs to an end as long as the action taken is within the provisions of the statute designed to meet that very problem.

It must be clear from what we have already said, we hold the Board's action was proper.

There are several remaining matters we touch briefly. The question of partial termination is not an issue here, and we express no opinion as to whether Youel, had he requested, was entitled to stay on as mathematics teacher.

 Youel questions the standing of the superintendent and says he was prejudiced by his continued participation in the case when, in fact, he should have withdrawn after the hearing before the Board. We believe this claim is without merit. The superintendent is the person who must initiate the proceedings to terminate. He is entitled to stay in the case. In any event we do not see how his participation prejudiced Youel. We do not decide if the superintendent could, *alone,* appeal an adverse decision.

Finally Youel disputes the assessment against him of the cost of the original transcript of the Board hearing. This involves an interpretation of §§ 279.16 and 279.17. The former makes the party requesting a transcript responsible for its cost. The latter imposes on the Board, in the event of appeal, the duty to furnish the adjudicator the original or certified copy of the entire record. These two are not necessarily in conflict. One may order a transcript for purposes other than appeal as, for instance, to determine if an appeal should be taken. In the event of appeal, it is the Board's duty to furnish the adjudicator with the record from which he is to work. We hold the cost of the transcript is chargeable to the Board, not to Youel. *McFarland v. Board of Education of the Norwalk Community School District,* 277 N.W.2d 901, 906 (Iowa 1979).

Except for the modification concerning cost of the transcript of the Board hearing, the judgment of the trial court is affirmed.

AFFIRMED.