**BOARD OF DIRECTORS OF THE
STARMONT COMMUNITY SCHOOL
DISTRICT, Appellee,**

v.

**Henry BANKE, Appellant.**

**No. 92–208.**

Supreme Court of Iowa.

April 21, 1993.

As Corrected April 27, 1993.

Becky Knutson of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

1. All references are to the 1987 Iowa Code.

Brian L. Gruhn and Robert Donahue, Cedar Rapids, for appellee.

Considered by McGIVERIN, C.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

SCHULTZ, Justice.

This appeal involves the termination of a non-probationary teacher by the Starmont School District's Board of Directors (Board) pursuant to Iowa Code section 279.15.[1] The teacher argues that the termination action should be dismissed because he did not receive a hearing within the statutory time limit. The teacher also contends that the Board's decision to terminate his contract was not supported by a preponderance of the evidence in the record. We affirm the district court's decision.

Henry Banke was an elementary school teacher with the Starmont Community School District for nine years from 1978 until 1988. Through the 1986–87 school year he taught fifth-grade science, reading and physical education and monitored study halls for all grade levels. At the beginning of the 1987–88 school term, Banke was transferred to a middle school and was assigned to teach sixth-grade math and language arts.

On March 9, 1988, Banke received a Notice and Recommendation to Terminate from Starmont's superintendent. The notice to terminate was issued pursuant to Iowa Code section 279.15 and cited six reasons for the recommendation. On March 11, an education association teacher advocate (advocate), assisting Banke, informed the superintendent that Banke had filed a grievance. On March 14, Banke requested a hearing before the Board. Conversations between the superintendent and the advocate led the superintendent to believe that Banke requested a continuance on the termination hearing until his grievance, seeking arbitration, was resolved. The statutory time limit for a termination hearing passed without action.

In early May, a date of June 9 was set for the arbitration hearing on the griev-

ance. On June 8, Banke dropped his grievance and filed an action in federal court.

A termination hearing took place on August 15 and 16 before the Board. On August 24, the Board issued its Findings of Facts, Conclusions of Law and Decision to terminate Banke's teaching contract. Banke appealed the Board's decision to an adjudicator pursuant to Iowa Code section 279.17. The adjudicator found that the Board lacked "just cause" for terminating Banke. The Board appealed this decision to the district court pursuant to Iowa Code section 279.18. The district court reversed the adjudicator's decision and affirmed the Board's decision to terminate.

I. *Time limit.* Iowa Code section 279.-15(2), titled "Notice of termination—request for hearing," provides that a teacher may request a hearing before the school board within five days upon receipt of the written notice of recommendation of termination. A private hearing must be held "no sooner than ten days and no later than twenty days following the receipt of the request unless the parties otherwise agree." § 279.15(2). Banke argues that the Board failed to comply with these time lines; therefore, the termination action should be dismissed. The Board offers two reasons why the action should not be dismissed for failure to comply with statutory time lines. First, the Board argues that the parties mutually agreed to a continuance. Second, the Board argues that case law has established an "automatic stay" of the termination proceedings when a grievance has been filed.

A. *Mutual agreement.* The Board urges that the communications between the superintendent and the advocate regarding the termination proceedings and Banke's grievance indicate that there was a mutual agreement to a continuance. The superintendent testified that during a conversation with the advocate they both agreed to a continuance. The advocate denies that he ever agreed to a continuance and also testified that his normal procedure for requesting a continuance includes a telephone call and a follow-up form letter.

The adjudicator and district court found that there was no mutual agreement to a continuance. We agree. Although it is understandable that the superintendent believed that Banke's action in filing a grievance and his conversations with the advocate created an agreement to a continuance, we do not believe the superintendent's assumptions can establish a mutual agreement. We agree with Banke that this evidence establishes a "misunderstanding" rather than a "specific understanding" by both parties.

■ B. *Automatic stay.* The Board argues that we have established an exception to the time-line requirements of section 279.15 in our case law. The Board contends that an "automatic stay" of the termination proceedings is triggered when a teacher files a grievance activating an arbitration proceeding. In support of this proposition, the Board cites *Shenandoah Education Association v. Shenandoah Community School District,* 337 N.W.2d 477 (Iowa 1983); *Borgen v. Anderson,* 366 N.W.2d 583 (Iowa 1985); and *Atlantic Education Association v. Atlantic Community School District,* 469 N.W.2d 689 (Iowa 1991). Banke disagrees with the Board's interpretation of these cases and argues that there is no "automatic stay" of termination proceedings.

In *Shenandoah,* we determined that duplicative proceedings should be avoided:

We urge the parties to teacher layoff and termination proceedings to expedite necessary hearings but to avoid, whenever possible, unnecessary hearings which may ultimately delay the final decision and possibly yield inconsistent decisions which must finally be sorted out in court.

337 N.W.2d at 483. In *Borgen,* we approved of a trial court's interpretation of *Shenandoah* to stand for the proposition:

[T]his court interprets *Shenandoah* as standing for the proposition that the chapter 279 proceedings should be deferred once such proceedings have been initiated by the recommendation of the superintendent and the teacher has elected to pursue resolution of the dispute concerning his termination through the negotiated procedures of the collective bargaining agreement. Any other read-

ing of the *Shenandoah* case could result in the type of "inconsistent decisions," "duplicate proceedings," and "unnecessary hearings" to' be avoided under the *Shenandoah* guidelines.

366 N.W.2d at 585. In concluding that a teacher's statutory termination proceedings should have been deferred until resolution of the grievance, we stated "this lawsuit is controlled by the rule which gives grievance termination procedures precedence over the statutory ones." *Id.*

Recently we held that "grievance arbitration takes precedence over an ongoing chapter 279 proceeding if the decision to terminate a teacher is arbitrable under the controlling collective bargaining agreement." *Atlantic*, 469 N.W.2d at 691.[2] Although we have not specifically stated that an "automatic stay" of termination proceedings is triggered when a teacher files a grievance, this is the practical effect of our holding that grievance proceedings take precedence over termination proceedings.

We conclude that case law has established an "automatic stay" exception to the section 279.15 time lines when a teacher files a grievance arbitrable under the collective bargaining agreement. By filing a grievance, Banke triggered an "automatic stay" of the termination proceedings; therefore, the termination action against Banke should not be dismissed for failure to comply with the statutory time lines.

II. *Scope of review of the termination decision.* The appeal provision, Iowa Code section 279.18, provides in part that:

> In proceedings for judicial review of the adjudicator's decision, the court shall not hear any further evidence but shall hear the case upon the certified record. In such judicial review, especially when considering the credibility of witnesses, the court shall give weight to the fact find-

ings of the board; but shall not be bound by them.

The court may reverse a school board's or adjudicator's decision if it finds that it was "unsupported by a preponderance of competent evidence in the record made before the board and the adjudicator when that record is reviewed as a whole." Iowa Code § 279.18(6).

Banke asserts that the scope of review provided in section 279.18 was properly articulated in *Board of Education of Ft. Madison v. Youel*, 282 N.W.2d 677 (Iowa 1979). Banke argues that we altered the scope of review provided by statute in our recent holding in *Fairfield Community School District v. Justmann*, 476 N.W.2d 335 (Iowa 1991).

We noted in *Youel* and in *Justmann* that our scope of review of chapter 279 proceedings is similar to judicial review of agency actions under the Iowa Administrative Procedure Act (IAPA). We paraphrased the IAPA in *Youel*, explaining that the court's task in teachers' termination cases is to "review the record in the manner specified in [§ 279.15] and make anew the judicial determinations specified in that section." *Youel*, 282 N.W.2d at 679. We also noted in *Youel* that there is a difference between the scope of review in chapter 279 proceedings and actions under the IAPA. Chapter 279 "makes it our duty on review to determine if the findings of the Board are supported by a preponderance of the competent evidence," *id.*, whereas the IAPA requires that an agency's decision is to be supported by substantial evidence.

In *Justmann*, we again noted the similarities between the IAPA and chapter 279 proceedings in discussing the weight to be given to a school board's factfindings. 476 N.W.2d at 338. We did not intend to indicate that the degree of judicial scrutiny

---

**2.** Under the rule set forth in *Atlantic*, the "automatic stay" is contingent on whether the decision to terminate the teacher is arbitrable under the collective bargaining agreement. 469 N.W.2d at 691. Banke points out that the collective bargaining agreement is not in the record and that section 279.18 limits judicial review to the evidence in the record. Iowa Rule of Appellate Procedure 10(a) also restricts judicial review to the record considered by the trial court. However, the grievance report Banke filed is included in the record. Also included in the record is a letter from the Board's attorney to the designated arbitrator regarding the date set for the arbitration hearing. We infer from this evidence that the decision to terminate Banke was arbitrable under the collective bargaining agreement.

provided in the IAPA and in chapter 279 is the same and did not depart from our reliance on *Youel.* In cases decided after *Justmann,* it is clear our court and the court of appeals have continued to follow the standard of review set forth in section 279.18 and in *Youel. See Board of Directors of Lawton–Bronson v. Davies,* 489 N.W.2d 19, 23 (Iowa 1992); *Mackey v. Newell–Providence Community School Dist.,* 483 N.W.2d 5, 8 (Iowa App.1992).

On review, courts must determine whether a school board's decision is supported by a preponderance of the competent evidence in the record. We explained in *Youel* that although this is "de novo talk" this is not de novo review. The court is limited on review to the record made before a school board. 282 N.W.2d at 679.

III. *Preponderance of the evidence.* Under Iowa Code section 279.15, a school district can only terminate a teacher for "just cause." The superintendent has the burden of proof to establish "just cause" by a preponderance of the competent evidence in the record. *Youel,* 282 N.W.2d at 680. Both parties cite *Briggs v. Board of Directors, Etc.,* 282 N.W.2d 740 (Iowa 1979), for the substantive definition of "just cause." The court in *Briggs* explained:

> Probably no inflexible "just cause" definition we could devise would be adequate to measure the myriad of situations which may surface in future litigation. It is sufficient here to hold that in the context of teacher fault a "just cause" is one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness. It must include the concept that a school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance. On the other hand, "just cause" cannot include reasons which are arbitrary, un-

fair, or generated out of some petty vendetta.

282 N.W.2d at 743.

■ In the notice of termination, the superintendent listed the following reasons as "just cause" for terminating Banke's teaching contract: (1) ineffective lesson plans; (2) poor organization and planning; (3) poor teaching technique; (4) inappropriate student supervisions; (5) failure to follow administrative directive on lesson plans; and (6) failure to follow through on assistance plan. The Board was limited to these reasons in making its termination decision. However, as this court notes in *Youel:*

> This does not mean each [reason] must be considered separately and must itself amount to just cause. It means, rather, that when the record is considered as a whole the proof must show by a preponderance of the evidence that there is just cause for termination on the basis of the reasons stated.

282 N.W.2d at 682.

At the hearing, Banke's colleagues, former students and parents of students testified on his behalf. In the Board's findings of facts, it stated that Banke has "a genuine concern for students' welfare and has achieved success particularly with shy students." In its ruling affirming the Board's decision, the district court noted that it did *not* conclude that Banke is "not a good person or a caring teacher." We too believe the evidence showed Banke was well-liked by his students and demonstrated many traits of a good teacher. However, when we review the record, giving weight to the Board's findings, we conclude that the Board's decision is supported by the preponderance of competent evidence in the record as a whole.

Banke's supervisors, a principal at the elementary school and a principal at the middle school, both noted problems with Banke's lesson plans in their evaluations of his teaching. Both supervisors found that Banke's lesson plans were incomplete, required improvement, and noted a lack of organization and planning in their evaluations of Banke. In addition, a high school principal brought in to evaluate Banke also

noticed a problem with Banke's organization and planning. His evaluations contained criticisms that Banke appeared to be "winging" his lessons and that he used class time inefficiently.

The Board's expert reviewed the scripted portions of the evaluations and concluded that Banke had problems with planning and organization. He noted that Banke's students were "unclear about what the assignments were, where they were going, and what they were supposed to do."

In addition, Banke's supervisors found deficiencies in his questioning techniques. Banke was also criticized for failing to state to students the objective of lessons, failing to re-teach as needed, failing to model new techniques to students, and failing to effect closure of lessons.

The Board found a "clear record of lack of compliance" with the principal's request for lesson plans. Banke was repeatedly late in turning in requested lesson plans to his principal and on two occasions did not turn in lesson plans at all. In their evaluations of Banke, the supervisors made recommendations and suggestions to Banke for improving teaching techniques. One encouraged Banke to take additional teaching courses in the summer and the other supervisor suggested that Banke observe a master teacher in the district, videotape his class and read an article on effective lesson planning. Although Banke did make arrangements to observe a master teacher, the observation never took place and he did not take additional courses, videotape his class or read the recommended article.

IV. *Summary.* Giving weight to the Board's findings of facts and reviewing the record as a whole, we conclude that the Board's decision to terminate Banke is supported by a preponderance of competent evidence in the record. The decision of the district court is affirmed.

**AFFIRMED.**