Mark RANDALL, Appellant,

v.

**ALLISON–BRISTOW COMMUNITY SCHOOL DISTRICT and Its Board Members, Debra Hummel, Robert Witt, Carol Henning, Kevin Hummel, and Janis Cramer, Appellees.**

No. 93–1461.

Supreme Court of Iowa.

March 29, 1995.

Gaylen V. Hassman of Engelbrecht, Ackerman & Hassman, Waverly, for appellant.

Gary J. Boveia of Boveia Law Firm, Waverly, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, ANDREASEN, and TERNUS, JJ.

HARRIS, Justice.

This is a dispute over termination of a teaching contract. The district court, sitting on judicial review, affirmed the administrative decision to terminate. On the teacher's appeal to us, we also affirm.

Mark Randall began teaching in Allison–Bristow Community School District in 1971. His long tenure was a stormy one; in addition to the present case, he has been warned or reprimanded for inappropriate physical contact with students by two other superintendents and one principal.

The proceeding on review here resulted from an incident in March 1992 when Randall was teaching a sixth grade science class. The students were to wash trays they had used as a part of a science experiment. Because the washing was to be done in an adjacent bathroom, the students had been instructed not to use the bathroom toilet unless they obtained Randall's permission.

Nathan, a student in the class, claims not to have recalled this rule. While some students were still waiting to use the bathroom sink to clean their trays, Nathan entered the

bathroom, removed the door stop, closed the door and proceeded to use the toilet. He did so without obtaining permission.

Noticing the closed door, Randall asked who was in the bathroom. Told it was Nathan, Randall entered the bathroom and re-closed the door. The door remained closed about two minutes before Randall again opened it. Students could then see Nathan in the bathroom crying and sniffling.

Nathan and other students testified that Randall had his hand on Nathan's neck or throat, a charge Randall denies. Randall does concede he reached out with his hand and cupped it under Nathan's jaw, he says to raise Nathan's head in order to achieve eye contact. Nathan's version was corroborated by several other students. Nathan emerged from the bathroom crying and upset. When asked by his friends why, Nathan said Randall had pushed him into the wall.

At the end of class Nathan and three friends went to the principal's office. The principal had Nathan wait there while he went and confronted Randall. Randall disputed Nathan's report of being pushed against the wall, but did twice admit placing a thumb and forefinger on Nathan's neck. There was physical evidence Nathan had been grabbed. His neck was red, and both the principal and his secretary noted a red oval print indentation on the right side of Nathan's neck, consistent with a finger or a thumb print. The secretary observed a scratch mark and a very visible bruise on Nathan's neck.

The incident with Nathan was the last in a series. In October 1983 a prior Allison–Bristow school superintendent wrote a memorandum that was both delivered to Randall and placed in his file. It concerned an incident in which Randall was said also to have physically mishandled a student. A similar incident with another student precipitated a similar memorandum in 1987. In 1988 a former principal of the district wrote another memorandum, warning Randall of his "continued failure to abide by the district's policies concerning supervision and/or physical handling of students," and that "any repeated unexcused and unjustified failure to abide by school policy and/or the conditions of previously-filed reprimands will be reason" for a "just cause termination."

In March 1988 physical force on still another student precipitated one more memorandum for Randall and his file. Finally, in October 1989, a new superintendent held a conference with Randall, attended also by the elementary administrator. The previous incidents were reviewed and Randall was again warned about his conduct.

Randall has another version of the record, claiming he was exonerated of the incidents, that the evidence of the incidents was to have been removed from his file, and that his refuting evidence in fact had been removed. The record though fully supports the administrative finding that Randall had been repeatedly warned of improper and excessive force toward his students in violation of school policy.

The principal informed superintendent Jeffory John Corkery of the incident involving Nathan. Corkery, who had not been involved in the earlier incidents, undertook an investigation. This was in accordance with written school board policy which requires a prompt response to allegations of abuse of students by school employees.

Corkery's investigation was prompt and thorough. After interviewing Nathan and looking at his neck, he returned with him to the room where Nathan reenacted what had occurred there. He spoke with Nathan's parents and reviewed Randall's personnel file. He heard testimony provided by students. Based on his findings Corkery decided to suspend Randall with pay. Corkery then sent Randall a letter, dated March 30, 1992, notifying him he was suspended during the investigation. After meeting Randall and his attorney, Corkery decided to recommend termination. Randall's resignation was requested and refused.

On May 8, 1992, Corkery issued a notice and recommendation to terminate Randall's contract. Hearing was scheduled for July 6, 1992. Because the fifteen-day period required by Iowa Code section 279.27 (1991) (meeting to be held not more than fifteen days after notification) had passed, the hearing was cancelled, as was the recommenda-

tion to terminate. A new notification was drafted and served, and this time properly filed with the board July 14, 1992. A hearing began July 20, 1992, and ended July 28. The board filed its decision to terminate August 1, 1992.

Randall appealed to an adjudicator pursuant to Iowa Code section 279.17. After the adjudicator affirmed the board decision, Randall sought judicial review in district court. The matter is before us on Randall's appeal from the district court's affirmance of the administrative action.

■ I. Review of a teacher termination proceeding is governed by Iowa Code section 279.18.[1] Pursuant to Iowa rule of appellate procedure 4, our review on such matters is for correction of errors. "Our review of the district court is at law for correction of errors under the seven standards set forth in section 279.18." *Board of Directors of Lawton–Bronson Community Sch. Dist. v. Davies*, 489 N.W.2d 19, 23 (Iowa 1992) (citing *Board of Educ. v. Youel*, 282 N.W.2d 677, 679–80 (Iowa 1979)).

II. Randall contends that, for a number of reasons, the termination proceeding violated Iowa Code section 279.27.[2] His first assignment of error challenges the district court's rejection of these contentions.

■ Randall first asserts the immediate notice requirement of section 279.27 was not met. The incident occurred March 27 and on March 30 Randall received a letter from Corkery informing him the matter was being investigated. On April 20 Randall's attorney was notified Randall's employment would be terminated if he did not resign. Randall's attorney replied May 7, stating Randall would not resign. On the next day, May 8,

Corkery issued a notice and recommendation to terminate. Randall's attorney requested a hearing but stated he could not be ready in the ten-to-twenty-day period required by statute so the matter was set for July 2. Before then it was realized that the fifteen-day requirement was not met. As was his right, Randall refused to waive the procedural error. As mentioned, the original notice and his hearing were dismissed and the procedure was begun anew.

Randall argues the new notice and recommendation to terminate were issued long after the incident, in violation of the immediacy requirements. Like the district court, we think the immediacy requirements were satisfied by the steps immediately taken. Those steps were not lost with the dismissal of the original proceeding. Randall was informed within days of the investigation and within a few weeks of Corkery's recommendation to terminate. He thereby received all that was demanded by the immediacy requirement.

■ Randall also asserts section 279.27 does not allow suspension during the investigation, only during an actual termination proceeding. Citing *McFarland v. Board of Education of Norwalk*, 277 N.W.2d 901 (Iowa 1979), and *Northeast Community Education Association v. Northeast Community School District*, 402 N.W.2d 765 (Iowa 1987), Randall complains that the suspension could not have been legally undertaken during the fifteen weeks prior to when the amended proceeding was instituted.

We also reject this challenge. We fail to see how the claimed improper suspension should constitute a justification for, or even relate to, the validity of the termination.

1. In material part Iowa Code § 279.18 states:
   In proceedings for judicial review of the adjudicator's decision, the court shall not hear any further evidence but shall hear the case upon the certified record. In such judicial review, especially when considering the credibility of witnesses, the court shall give weight to the fact findings of the board; but shall not be bound by them.

2. Iowa Code § 279.27 states:
   A teacher may be discharged at anytime during the contract year for just cause. The superintendent or the superintendent's designee,

shall notify the teacher immediately that the superintendent will recommend in writing to the board at a regular or special meeting of the board held not more than fifteen days after notification has been given to the teacher that the teacher's continuing contract be terminated effective immediately following a decision of the board. The procedure for dismissal shall be as provided in sections 279.15(2) and 279.16 to 279.19. The superintendent may suspend a teacher under this section pending hearing and determination by the board.

Even if we were to assume some flaw existed in the suspension, such a flaw would not serve to bar the termination. Randall did not attack the suspension directly, but only raised the matter defensively, as a bar to his termination. Randall's position is further weakened by the fact that his suspension was with pay, so his property interests were not adversely affected.

▪ Randall insists there is no statutory authority to dismiss a first proceeding and refile a second. We answer that the statute does not prohibit it either. Although it might be contended otherwise, we see no inconsistency in allowing the dismissed proceeding to satisfy the immediacy requirement but, at the same time, not serve as an adjudication. The immediacy requirement serves to promptly alert a teacher of the charge being leveled. Randall was in no way prejudiced in this regard; he was fully apprised of the claims against him and was promptly called to defend against them.

▪ The rule has long been established that the dismissal of a teacher termination proceeding is not an acquittal or in any sense res judicata. The school is free to dismiss and proceed anew. *White v. Wohlenberg*, 113 Iowa 236, 238, 84 N.W. 1026, 1026 (1901) (cited with approval in *Snider v. Kit Carson Sch. Dist. R–1*, 166 Colo. 180, 442 P.2d 429, 432 (1968)). The rule is consistent with the statutory scheme regarding statutes of limitations. *See* Iowa Code § 614.10 (in reckoning limitations of actions, if an action fails and new suit is filed within six months, new suit generally considered a continuation of the first).

We conclude that Iowa Code section 279.27 was not violated.

▪ III. Corkery saw to it that Randall was given access to his personnel file and was allowed to copy it. Corkery does acknowledge that two evaluations, one from 1990 and another from 1991–92, were missing from the file. No one can explain why.

Corkery states only that the complete existing file was given to Randall.

Randall argues that, because of the missing evaluations, a complete file was not given to him and contends the absence of the two evaluations prejudiced him. Relying on Iowa Code section 279.15(2) [3] Randall argues this claimed violation vitiates the proceeding to terminate his contract. He thinks the board relied heavily on prior evaluations and thus the missing ones, which may have weighed in his favor, were crucial to his defense.

Under the circumstances here we are convinced the missing evaluations should not serve to block termination. In the first place Randall overestimates the extent to which the board relied on past evaluations. We think the board recited Randall's record just as we did, by way of background. We do not read the board's decision as suggesting Randall's past difficulties supported either version of the incident with Nathan. Rather it served to show Randall was on notice that his conduct at the time was subject to some scrutiny.

Other matters mitigate against Randall's contention. One of the missing evaluations was by the principal who investigated Nathan's incident. He testified at the hearing and was subject to cross-examination so any information in his evaluation could be obtained by direct testimony. There is no hint that the evaluations were deliberately purged by school officials. It is important that, as mentioned, all that remained in Randall's file was provided.

The district court correctly held that any failure to provide the missing evaluations is no bar to Randall's termination.

IV. We have considered and now reject Randall's remaining assignments. These include a claim that the board failed to sufficiently describe in its findings of fact just what Randall did wrong. Another claim is that the finding of just cause was not supported by a preponderance of competent evidence. To separately discuss these assign-

---

**3.** Iowa Code § 279.15(2) states in material part that

[a]s part of the termination proceedings, a teacher's complete personnel file of employ-

ment by that board shall be available to the teacher, which file shall contain a record of all periodic evaluations between the teacher and appropriate supervisors.

ments in addition to what we have already said would unduly extend this opinion and yield nothing of precedential value.

**AFFIRMED.**