The SHELDON COMMUNITY SCHOOL DISTRICT BOARD OF DIRECTORS, Appellee,

v.

Ronald LUNDBLAD, Appellant.

No. 93–1757.

Supreme Court of Iowa.

March 29, 1995.

Becky S. Knutson of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

Thomas J. Whorley of Wolff, Whorley, De Hoogh & Thompson, Sheldon, for appellee.

Thomas W. Foley of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for amicus curiae Iowa Ass'n of School Boards.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This is an appeal by a teacher from a district court ruling on judicial review that reversed an adjudicator's decision to reinstate the teacher following the school board's termination of his teaching contract. The question is whether the record supports the board's finding of just cause for termination. Because we believe the record amply sup-

ports the board's decision, we affirm the judgment of the district court.

## I. *Background Facts and Proceedings.*

Appellant Ronald Lundblad began his teaching career with appellee Sheldon Community School District in 1973. The hearing giving rise to this appeal took place in December 1992. At that time Lundblad was teaching ninth-grade English and serving as the ninth-grade football coach.

The incident triggering this controversy involved a fourteen-year-old boy in Lundblad's ninth-grade English class. The students in the class had been asked to critique the movie *Charly*. The student in question gave an oral review of the film which closed with the comment that he would rather be taken out to the parking lot and beaten to death than have to watch the movie again. Lundblad gave the student's presentation a favorable grade, but wrote the following comment on his paper: "I'd be glad to take you out to the street and beat you to death. The way your face looks, I think someone already has." Apparently the boy was suffering an outbreak of teenage acne. Although he made light of the comment among his peers, he and his parents testified that he was extremely self-conscious about his appearance and was hurt and embarrassed by the incident.

The record reveals that this was not the first time Lundblad's use of sarcastic humor had backfired in class. Earlier in the school year, students in one of Lundblad's classes were discussing the rock star Madonna. One of the students in the class—who happened to be the son of a local minister—remarked that Madonna was not so great and that she was just selling sex, something anyone—even he—could do. Lundblad responded that if this student tried to sell sex, "he would go bankrupt" and, furthermore, his brother, Eric, "would be his first customer." In a meeting with the student's parents, Lundblad acknowledged the inappropriateness of his comment, and assured his principal that it would never happen again.

Lundblad's personnel records reveal incidents with a similar flavor throughout his teaching career. In 1986, he resigned as the eighth- and ninth-grade girls' basketball coach after allegedly referring to the girls as "prima donna little bitches" and offending his eighth-grade track team with the observation that they were so bad "they couldn't win the Special Olympics." Conferences with school officials over these comments were accompanied by complaints, denied by Lundblad, that he touched and looked at the girls in inappropriate ways and that his conversations contained sexual overtones that made the girls uncomfortable.

In his own testimony before the board, Lundblad affirmed that humor was part of his teaching technique. He acknowledged, however, that the use of sarcasm with impressionable adolescents could be a dangerous thing. He went on to admit on cross-examination that he once told a student who submitted a paper about teenage suicide that "for extra credit why don't you try it?"

Based on this record, the high school principal and the superintendent of schools believed Lundblad had ceased being an effective role model and could not be counted upon to build self-esteem among his students, an important district goal. The school board concurred in this judgment, concluding that Lundblad's failures constituted just cause for terminating his teaching contract.

Lundblad sought an adjudicator's review of the school board's decision in accordance with Iowa Code section 279.17 (1991). The record before the adjudicator included the transcript of testimony before the board, documentary evidence submitted at the hearing, and the board's findings of fact and conclusions of law.

The adjudicator's ruling noted that during Lundblad's tenure with the school district he had taught over 2000 different students, coached approximately 900 students and, by his own estimation, engaged in "hundreds of thousands" of interactions with students. His classroom teaching style was relaxed and invited student participation. Current and former students alike, however, agreed that Lundblad's humor was "different" and that students "had to know how to take it."

Weighing these factors against Lundblad's "occasional deficiencies," the adjudicator con-

cluded that the record demonstrated no more than significant errors of judgment. He believed that the board's action terminating Lundblad was not supported by a preponderance of competent evidence and must be reversed. The adjudicator did find, however, that Lundblad's offensive joking was inappropriate in a high school setting, and must be addressed. He therefore ordered sensitivity training, at Lundblad's expense, "to prevent similar circumstances from ever again occurring."

The district court, on the board's application for judicial review, reversed the adjudicator's decision. It concluded that the adjudicator's conclusions were internally inconsistent insofar as his finding that Lundblad's conduct was on the one hand unacceptable and on the other insufficient to support just cause for termination. The court also found that the adjudicator strayed from his statutory role by substituting his judgment for that of the board in marking the bounds of tolerable conduct. It is from this decision that Lundblad appeals.

## II. *Issues on Appeal.*

The principal question on appeal is whether the record supports the board's finding that just cause exists to warrant Lundblad's termination. Preliminarily, however, Lundblad challenges the district court's finding that the adjudicator strayed from his statutory authority under Iowa Code section 279.17 in reversing the board's decision.

■ A. *Adjudicator's authority.* Iowa Code section 279.17 authorizes an adjudicator to

affirm board action or remand to the board for further proceedings. The adjudicator shall reverse, modify, or grant any appropriate relief from the board action if substantial rights of the teacher have been prejudiced because · the board action is:

1. In violation of a board rule or policy or contract; or

2. Unsupported by a preponderance of the competent evidence in the record made before the board when that record is viewed as a whole; or

3. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Section 279.17 also directs that the adjudicator, especially when considering the credibility of witnesses, "shall give weight to the fact findings of the board; but shall not be bound by them."

Here the district court rested its refusal to uphold the adjudicator in part on the belief that, in rejecting termination, the adjudicator had "substitut[ed] his judgment for that of the School Board." Lundblad disputes this finding on appeal, claiming the adjudicator acted in conformity with section 279.17 and the district court erred in ruling otherwise. The school board, joined by the Iowa Association of School Boards as amicus curiae, responds by urging this court to narrowly define the adjudicator's role and "confirm the central role local school districts occupy in determining what constitutes just cause for dismissal."

The record reveals that the adjudicator was a highly qualified individual, selected by the parties according to statutory guidelines. *See* Iowa Code § 279.17. He found no fault with the board's factual findings. He merely concluded that those facts did not support termination for just cause by the requisite preponderance of the evidence. Given that conclusion, he believed that substantial rights of the teacher had been prejudiced, thereby warranting reversal of the board's termination order.

We do not believe this failure by the adjudicator to reach the same conclusion as the board amounts to the unwarranted usurpation of power that the board and amicus suggest. Clearly the adjudicator has a duty, under the statute, to review the record as a whole and disagree with the board if the facts and the law so require. In doing so, the adjudicator did not stray from section 279.17, but followed it. The district court was incorrect in ruling otherwise.

■ B. *Evidence of "just cause."* The fact that the adjudicator differed from the board on the merits does not end the inquiry. The district court on judicial review may

affirm, reverse, or modify the adjudicator's *or* the board's decision

> if substantial rights of the petitioner have been prejudiced because the action is ... [u]nsupported by a preponderance of the competent evidence in the record made before the board *and* the adjudicator when that record is viewed as a whole....

Iowa Code § 279.18 (emphasis added); *see Board of Directors v. Banke,* 498 N.W.2d 697, 701 (Iowa 1993). Like the adjudicator, the court is obliged to give weight to the board's factual findings but is not bound by them. Iowa Code § 279.18. Our review on appeal is for the correction of errors at law. *Board of Educ. v. Youel,* 282 N.W.2d 677, 680 (Iowa 1979).

■ As in virtually every teacher termination case, the controversy boils down to whether the record supports the board's conclusion that just cause exists to warrant Lundblad's dismissal. That conclusion must be supported by more than just *substantial evidence; a preponderance*—or greater weight—of the competent proof is required. Iowa Code § 279.18; *Banke,* 498 N.W.2d at 701; *Fairfield Community Sch. Dist. v. Justman,* 476 N.W.2d 335, 338 (Iowa 1991); *Youel,* 282 N.W.2d at 679; *cf. Briggs v. Board of Directors,* 282 N.W.2d 740, 744 (Iowa 1979) (noting lower substantial evidence standard applicable in school administrator dismissal).

■ "Just cause" for termination of a tenured teacher's contract has been repeatedly defined as conduct

> which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness. It must include the concept that a school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance. On the other hand, "just cause" cannot include reasons which are arbitrary, unfair, or generated out of some petty vendetta.

*Briggs,* 282 N.W.2d at 743; *accord Banke,* 498 N.W.2d at 701; *Everett v. Board of Educ.,* 334 N.W.2d 320, 321 (Iowa App.1983). It is unnecessary for each charge of misconduct listed on the superintendent's notice to the teacher to constitute just cause in and of itself. Rather, we must decide whether the allegations and circumstances taken together satisfy the just-cause standard. *Youel,* 282 N.W.2d at 682; *see also Everett,* 334 N.W.2d at 321.

Lundblad's challenge to the board's just-cause finding is three pronged. First, he claims the necessary quantum of proof can only be reached by resurrecting incidents long since resolved. Second, he thinks the movie review incident has been blown out of proportion and amounts to no more than the parents' petty vendetta against him. Third, he believes the board unfairly measured his conduct by reference to cases involving much more egregious behavior. We find no merit in any of these arguments.

On the question of dredging up old records, it is inescapable that Lundblad's most recent run-ins with students and parents merely fit a pattern that has evolved over several years. The offensive remarks that led to his resignation as the girls' track coach in 1986 are not unlike the derogatory and suggestive comments suffered by the girls' basketball team in 1989 or the sarcastic student evaluations handed out in 1991 and 1992. In each case Lundblad assured district officials that he would do better in the future. Individually, the incidents may have been resolved satisfactorily. We do not believe the board, however, is compelled to ignore the pattern that emerges. *Cf. Randall v. Allison–Bristow Community Sch. Dist.,* 528 N.W.2d 588, 590 (Iowa 1995) (record of prior incidents furnished proof that teacher knew subsequent conduct would be closely scrutinized).

Contrary to Lundblad's argument, this case is not like *Munger v. Jessup Community School District,* 325 N.W.2d 377 (Iowa 1982). There a teacher, who also served as wrestling coach, was terminated solely because of the board's dissatisfaction with the wrestling team's performance. *Id.* at 379. The teacher offered to resign his coaching duties to resolve the matter, but his contract was not severable. *Id.* at 378. We ruled

that his coaching failure did not satisfy the "just-cause" standard for termination of his teaching contract, given his strong evaluations as a teacher and evidence of other factors bearing negatively on the wrestling program. *Id.* at 380. *Munger* does not stand for the proposition that a teacher who resigns from coaching duties will never thereafter be required to answer for the misconduct leading to the resignation.

As for Lundblad's assertion that his termination rested not on just cause but on some petty and unfair vendetta, the record simply does not bear out this claim. Lundblad acknowledged, in retrospect, the impropriety of joking sarcastically about a student's appearance. Whether the student was hurt and embarrassed by the incident, as he and his parents testified, or whether the parents were merely out to "get" Lundblad, as he suggests, was a matter of witness credibility determinable by the board. *See* Iowa Code §§ 279.17, .18.

We also find unpersuasive Lundblad's claim that the board measured his conduct against holdings in cases involving much more egregious behavior. Although the board's ruling cited opinions in which this court and others have upheld teacher terminations on a variety of grounds—some more serious than those involved here—the board focused primarily on one aspect of the just-cause standard articulated in *Briggs:* leadership and role model effectiveness. *See Briggs,* 282 N.W.2d at 743. It concluded that Lundblad's repeated and sarcastic put-downs were in direct conflict with the school district's goal of promoting students' self-esteem, confidence and positive self-image. The fact that Lundblad persisted in this type of classroom "humor," despite warnings that it was risky and objectionable, also fits squarely within the *Briggs*-standard for dismissal of teachers "who are neither performing high quality work nor improving in performance." *Id.*

In summary, we are convinced that the board's findings of just cause for termination are supported by a preponderance of the competent evidence in the record. Those findings are not, as Lundblad claims on appeal, arbitrary, unfair or motivated by a petty vendetta. Accordingly, we affirm the judgment of the district court which upheld the decision of the school board.

**AFFIRMED.**