Rose WILSON, Petitioner-Appellant,

v.

DES MOINES INDEPENDENT COM-MUNITY SCHOOL DISTRICT, Respondent-Appellee.

No. 85–859.

Court of Appeals of Iowa.

April 23, 1986.

682 ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Thomas Mann, Jr., Des Moines, for petitioner-appellant.

Edgar H. Bittle and Elizabeth Gregg Kennedy of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, Des Moines, for respondent-appellee.

Heard by OXBERGER, C.J., and SCHLEGEL, and HAYDEN, JJ.

SCHLEGEL, Judge.

Petitioner teacher appeals a district court decision affirming the termination of her employment contract with respondent school district. We are asked on appeal to reverse the lower court on the basis that the termination decision is unsupported by substantial evidence in the record. Petitioner also alleges that the real reason for her dismissal was due to her perceived mental disability, thus rendering the statutory termination notice invalid. We conclude that a preponderance of the evidence establishes "just cause" for termination of petitioner's teaching contract under Iowa Code section 279.15(2) (1985), and therefore affirm the district court.

Petitioner, a nonprobationary teacher in the Des Moines School District, was transferred from North High School to Tech High School in October, 1981. She received her first formal evaluation at Tech in February, 1982, and was given a composite rating of "needs improvement." An assistance team was requested for petitioner for the 1982–83 school year. In September, 1982, petitioner was notified that she required improvement in the areas of planning, meeting individual student's needs, and improving classroom discipline. During the 1982–83 school year, petitioner continued to have problems conforming to the school district's policies. In December, 1982, she went home during school, leaving her students unattended. In February, 1983, she was warned about her repeated tardiness, her calls to the registrar at inappropriate times contrary to work rules, her problems with fellow faculty members, and her disruptive and inappropriate calls to parents from the school business office. It was also during this month that petitioner was reprimanded for teaching her class from the hall outside the classroom. Despite these warnings and reprimands, petitioner failed to report to work on time on March 30, 1983, and did not notify the registrar until 9:30 a.m. Because of her repeated violation of the work rules regarding tardiness, leaving classes unsupervised, and failure to give proper notification regarding absences, petitioner was suspended for several days.

Due to her work-related behavior, petitioner was evaluated on May 5, 1983, as "not meeting district standards." This rating meant that she had consistently failed to perform tasks and exhibit characteristics as required in the evaluation instrument, and/or had failed to improve sufficiently to meet district standards. In particular, petitioner failed to meet district standards by not demonstrating sensitivity in communicating with staff and in refusing to comply with school regulations and policies. Petitioner was also evaluated as "physically and/or emotionally unable to perform assigned duties," which stemmed from her excessive tardiness and failure to maintain

self-control. Finally, at this time, petitioner did not meet district standards by failing "to use appropriate evaluation activities relating to the instructional objectives."

Respondent's superintendent recommended termination of petitioner's contract at this time, but instead, the executive director of personnel sent her a letter notifying her that due to her failure to meet certain standards, as well as her refusal to work on improving her performance, she was suspended for three working days. It was made clear to petitioner at that time that upon her return she would be expected to begin correcting her past behavior.

In September, 1983, petitioner was again assigned an assistance team and was given an improvement plan with specific objectives that essentially included all of the activities discussed above. One of the specific objectives was that petitioner use a clear, reasonable, and fair grading system. However, petitioner continued to have problems with her grading policies.

On November 1, 1983, a conference was held with petitioner concerning an allegation that everyone in her class was getting a grade of A. Petitioner explained that since her evaluation system was in question, she was giving all students that handed in their work, A's. Still, one student, who had never been to class, received a C, and four students who were enrolled received no grade at all. On November 3, 1983, students petitioned the administration objecting to petitioner's grading system.

The unit leader for the Hearing Department reported to the administration that petitioner would not meet with her. She reported that petitioner had no student records available, and that petitioner had informed her that while one student had a Form 13 and was failing, the others were doing fine. However, the special education team working with the parents had discovered that the student who received a Form 13 had earlier been given an A at midsemester. On December 2, 1983, petitioner informed eight students that had received either an A or a B for the first nine weeks that they would receive a failing grade for the semester. Once again, the administra-

tion scheduled conferences with petitioner to evaluate her performance and grading system. Each time a conference was held, petitioner was informed that her behavior and performance did not meet district standards.

Petitioner exhibited hostility toward her co-workers throughout the year, and did not attend teachers' meetings. As a result of an unfavorable evaluation in December 1983, petitioner was suspended indefinitely on January 12, 1984, pending termination proceedings.

On March 5, 1984, petitioner was given notice of recommendation to terminate her contract. The following were listed in the notice as reasons for considering termination: (1) unsatisfactory performance, (2) unsatisfactory interpersonal relations with students and staff, (3) failure to comply with school regulations, policies and directives, (4) inability to perform assigned duties, and (5) failure to use appropriate evaluation activities. On June 5, 1984, the board of education voted to terminate petitioner's contract effective June 30, 1984, for the reasons stated in the March 5, 1984, notice sent to petitioner. The board also specifically found that, "The evidence in the record does not show that Mrs. Wilson has been treated differently than any other employee in the District or that she is under any physical or emotional disability."

The board's decision was submitted to an adjudicator and he affirmed the termination. The district court, on judicial review, also upheld the termination. Petitioner has now appealed the lower court's decision pursuant to Iowa Code section 279.18.

Judicial review of an adjudicator's decision in teacher termination proceedings is limited to the record made before the board. *See* Iowa Code § 279.18. The district court is then empowered to affirm, remand, reverse, modify, or grant any other relief from the board's or adjudicator's decision provided the decision is, among others, "unsupported by a preponderance of the competent evidence in the record made before the board and the adjudicator when the record is viewed as a whole."

Iowa Code 279.18(6) (1983). Appeal to the supreme court "under Iowa Code § 279.18 is at law for the correction of errors under the seven standards there set out." *Board of Education of Fort Madison Community School District v. Youel,* 282 N.W.2d 677, 680 (1979).

Our review is "limited to the specific reasons stated in the superintendent's notice of recommendation of termination." Iowa Code § 279.16; *Smith v. Board of Education,* 293 N.W.2d 221, 225 (Iowa 1980).

■ Nonprobationary teachers may be discharged for "just cause." A "just cause" for termination is one which:

[D]irectly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance, including leadership and role model effectiveness. It must include the concept that a school district is not married to mediocrity but may dismiss personnel who are neither performing high quality work nor improving in performance. On the other hand, "just cause" cannot include reasons which are arbitrary, unfair or generated out of some petty vendetta.

*Briggs v. Board of Directors of Hinton Community School District,* 282 N.W.2d 740, 743 (Iowa 1979).

The burden of proof of "just cause" is, of course, upon the superintendent. If the Board concludes he has carried that burden, and adopts his recommendation, the teacher must then demonstrate, through an appeal to an adjudicator, section 279.17 or upon judicial review, section 279.18, that the board committed error in adopting the recommendation.

*Youel,* 282 N.W.2d at 680.

■ We have already set out the facts that the superintendent relied upon in submitting the recommendation for termination and it will serve no purpose to repeat them. The record shows that during the span of well over a year and a half, including two teaching years, petitioner was evaluated and informed of her professional shortcomings. The superintendent constantly made it clear to her that failure to comply with the district's standards may result in sanctions, discipline, or discharge. The record reveals no evidence that demonstrates petitioner's good faith attempt to improve her professional skills or in any way to rise to the standards stressed to her in her evaluations. The superintendent finally listed the specific reasons supporting his recommendation that petitioner's contract be terminated to the board of education, and the board did in fact terminate her contract based upon those reasons. Our examination of the record as a whole establishes by a preponderance of the evidence that petitioner failed to meet the performance standards set by the district for its teaching personnel, and that there was just cause to terminate her contract.

Petitioner alleges on appeal that the reasons listed by the superintendent for her recommended termination, and the subsequent termination, are really a pretext for the real reason she was terminated. She argues that the real reason for her termination was that the administration "perceived" her to be emotionally disabled. She argues therefore that the reasons stated in her notice of termination were inadequate.

■ We note at the outset that she carries the burden of proof on this issue. *Briggs,* 282 N.W.2d 740, 743 (Iowa 1979). However, there is no evidence supporting her allegations and we have already determined that the reasons for termination, as well as the decision to terminate petitioner's contract, are supported by a preponderance of the evidence when the record is viewed as a whole. Therefore, petitioner's argument on this issue is without merit.

Because we conclude the decision to terminate petitioner's teaching contract is supported by a preponderance of the evidence when viewed as a whole, we affirm the district court's judgment.

**AFFIRMED.**