# IN THE SUPREME COURT OF IOWA

No. 21–0067

Submitted September 14, 2022—Filed October 21, 2022

**DANNA BRAAKSMA,**

Appellant,

vs.

**BOARD OF DIRECTORS OF THE SIBLEY-OCHEYEDAN COMMUNITY SCHOOL DISTRICT,**

Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Osceola County, Nancy L. Whittenburg, Judge.

A teacher appeals the termination of her teaching contract. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which all participating justices joined. May, J., took no part in the consideration or decision of the case.

Christy A.A. Hickman (argued) of Iowa State Education Association, Des Moines, for appellant.

Stephen F. Avery (argued) of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

**McDERMOTT, Justice.**

Administrators at the Sibley-Ocheyedan Community School District raised concerns about the performance of one of the district's high school teachers and required her to participate in an "intensive assistance program" described in Iowa Code chapter 284. Under the school district's own policy implementing chapter 284, teachers required to participate in an intensive assistance program have at minimum six months, and at most twelve months, to complete the program. If, following a teacher's participation in the program, the teacher has not successfully completed the program or continues to fail to meet performance standards, then the school district has the power (among other options) to immediately terminate the teacher's employment.

In this case, the school district fired the teacher, Danna Braaksma, before she'd been afforded six months to carry out her intensive assistance program. The school district argues that, under Iowa Code section 279.27, it possessed the power to terminate Braaksma at any time during the contract year for "just cause" regardless of any ongoing intensive assistance program. Braaksma, for her part, argues that she was denied her contractual and statutory right to complete the intensive assistance program before the school district fired her and that, in any event, the school district had insufficient evidence of any performance problems to establish just cause for her firing.

Braaksma appealed the school board's decision to terminate her teaching contract to the district court, which in turn affirmed the school board's decision. Braaksma then appealed to this court. We transferred the case to the court of

appeals. The court of appeals reversed the district court's ruling and the school board's termination decision. The school board sought further review, which we granted.

I.

The timeline of events surrounding Braaksma's intensive assistance program falls across two academic years: the 2018–19 school year and the 2019–20 school year. Braaksma had been a full-time Spanish language teacher with the school district since 2001 and had served as a substitute teacher in the district for twenty years before that. In March 2019, the high school's principal, Stan De Zeeuw, conducted an in-class evaluation of Braaksma's teaching as part of her regular evaluation process that takes place every three years. On April 25, De Zeeuw and the school district's then-superintendent Bill Boer informed Braaksma about concerns with her teaching performance. De Zeeuw told Braaksma that his review revealed she was failing to meet six of the eight teaching standards against which Iowa teachers are evaluated (set out in Iowa Code section 284.3(1)(*a*)–(*h*) (2019)) and that she'd be placed on an intensive assistance program to address the deficiencies. The six standards that he referred to (as quoted from the statute) are as follows:

> *a.* Demonstrates ability to enhance academic performance and support for and implementation of the school district's student achievement goals.
>
> . . . .
>
> *c.* Demonstrates competence in planning and preparing for instruction.
>
> . . . .

*e.* Uses a variety of methods to monitor student learning.

*f.* Demonstrates competence in classroom management.

*g.* Engages in professional growth.

*h.* Fulfills professional responsibilities established by the school district.

Iowa Code § 284.3(1).

De Zeeuw read to Braaksma from a document he'd prepared titled "Plan of Assistance—Assistance Phase" that contained a bulleted list of fourteen requirements for Braaksma to meet. These requirements included, for instance, that "[s]tudents will receive timely feedback on assessments and homework," "[s]tudents will have multiple grades entered within each progress period (twice a quarter)," "[g]rades will not be mass entered just before conclusion of said grading period," "[a]ll classroom materials will be prepared before class begins each day," and "[c]lassroom rules will be posted and referred to as needed."

The plan-of-assistance document contained lines for both De Zeeuw and Braaksma to sign and under these signature lines stated: "Signature of the teacher does not indicate that the teacher agrees with the content of the review, only that they have received a copy." Braaksma expressed frustration and confusion with the administrators' decision that she needed an intensive assistance program and the requirements that the document outlined. She refused to sign her name but nonetheless received a copy of the document and was told she'd be responsible for carrying out the plan starting immediately. Under the heading of "Proposed Timeline," the document states: "Begin working on in Spring of 2019. Will meet and discuss during 2019–2020 academic year.

Satisfactory progress must be achieved to maintain employment in for [sic] 2020 and beyond." Under the heading "Next Meeting Date," the document states: "TBD, 2019 Teacher Check-out, beginning of 2019–2020 academic year."

Braaksma testified that neither De Zeeuw nor Boer discussed the plan with her again during the 2018–19 school year. Boer left the school district over the summer and was replaced as superintendent by James Craig.

On August 21, shortly before students returned to begin the 2019–20 school year, Braaksma, De Zeeuw, and Craig met to discuss the intensive assistance program. During this meeting, De Zeeuw again read from the same fourteen-point plan-of-assistance document presented at the meeting on April 25. Braaksma interrupted at multiple points—either, in the administrators' view, disparaging or challenging various components of the plan or, in Braaksma's view, seeking clarification or explanation about parts of the plan. Regardless, Craig was agitated by Braaksma's interruptions, at one point saying, "Do I need to ask for your resignation now, or can this meeting continue?" When Braaksma persisted, Craig informed her that the meeting was over and told her to get out of his office. Later that day, Braaksma and Craig met in the hallway. Craig asked Braaksma, "[A]re you going to follow the plan or not?" Braaksma agreed to follow the plan as presented. Braaksma testified that she kept the plan-of-assistance document with her so she'd have it available to refer to.

In early September, De Zeeuw emailed Braaksma about formal evaluations related to her intensive assistance program that would take place on three dates during the 2019–20 school year: October 31, January 31, and March 31. And in

an earlier email, De Zeeuw reminded Braaksma that it was the teacher's responsibility to set up a "pre-observation conference" with him before the scheduled observation date. Not long thereafter, Braaksma approached De Zeeuw to set up a meeting. De Zeeuw agreed to meet with her, but he never followed up with a proposed time. Sometime later Braaksma ran into De Zeeuw in the hallway and reminded him of her request to meet. De Zeeuw again acknowledged her request but never got back to her about a meeting date.

Other than on August 21, when De Zeeuw read from the plan-of-assistance document, neither De Zeeuw nor Craig met again with Braaksma to discuss the intensive assistance program, the plan-of-assistance document, or her performance. Braaksma's only knowledge of any efforts to observe her performance after instituting the intensive assistance program involved a few episodes in which De Zeeuw stood outside her classroom door and watched through the glass for perhaps five minutes each time. De Zeeuw, for his part, testified that he informally observed Braaksma eight to ten times but conceded that these observations consisted of watching from outside the door or "brief pop-ins" that lasted five to ten minutes. (His notes reflect only four such observations.) He never communicated with Braaksma what he noticed or concluded from any of these observations.

On Friday, October 11, Braaksma tried to initiate a conversation with De Zeeuw in a supply room about the plan and noted that her evaluation was to happen within the next few weeks. Finding De Zeeuw's response lacking in substance, Braaksma went to Craig's office to try to speak with him. Craig

requested that Braaksma meet back at his office at 3:30 p.m. When Braaksma returned at 3:30, Craig directed her to the boardroom, where De Zeeuw was waiting.

Braaksma testified that Craig began by saying, "We've done as much as we can with you." Craig then provided Braaksma with a written separation agreement. Under the proposed agreement, Braaksma would resign from her teaching position with the school district and, in exchange, the district would continue to pay her salary and provide insurance through the end of the school year. She didn't sign the agreement. De Zeeuw testified that Craig told Braaksma, "One way or another you won't be here Monday," and that if she didn't sign the agreement that day, she'd be placed on administrative leave until the offer's expiration in twenty-one days. Braaksma testified that she didn't recall being told that she'd be placed on administrative leave if she didn't sign. She reported for work as usual on the following Monday (October 14), fearing that if she didn't appear for work, it would be held against her. Craig told De Zeeuw to contact the county sheriff's office to have Braaksma removed from the school. Braaksma ultimately left after receiving written confirmation from Craig that she'd been placed on administrative leave.

On November 13, the school district served Braaksma with notice of her upcoming termination proceeding at which the school board would consider Craig's recommendation to terminate Braaksma's teaching contract. The notice states that the recommendation to terminate her contract was being made for the following reasons:

1. An intensive assistance program was provided to you and you refused to comply with the program with regard to grading.

2. Failed to teach appropriate to grade level.

3. Failed to meet Teaching Standard 8.

4. Students in Spanish II have not received appropriate instruction.

The school board accepted Craig's recommendation and terminated Braaksma's teaching contract in January 2020.

## II.

Under Iowa Code section 284.8(2) (2020), if a teacher's evaluator finds that the teacher's performance is "not meeting district expectations under the Iowa teaching standards," then "the evaluator shall, at the direction of the teacher's supervisor, recommend to the district that the teacher participate in an intensive assistance program." "Intensive assistance" is defined as "the provision of organizational support and technical assistance to teachers, other than beginning teachers, for the remediation of identified teaching and classroom management concerns for a period not to exceed twelve months." *Id.* § 284.2(6). Every school district in Iowa "shall be prepared to offer an intensive assistance program," and any teacher not meeting a school district's expectations under the Iowa teaching standards "shall participate in an intensive assistance program." *Id.* § 284.8(2)–(3).

The school district's intensive assistance policy states that when a teacher is found to not be meeting the school district's standards, "the employee will be placed on intensive assistance and, in conjunction with his/her principal, will mutually develop an intensive assistance plan." The policy specifies that a

teacher "will have a minimum of 6 months and a maximum of 12 months to implement changes at which time" the teacher may, among other options, then be "[r]ecommended for termination effective immediately or at the end of the year."

Braaksma argues that if the school district wished to fire her based on a failure to meet the district's teaching standards, the district was required to give her at least six months to complete the program. She argues, in other words, that Iowa Code chapter 284, in conjunction with the school district's policies and her teaching contract, prevented the school district from firing her for the performance reasons addressed in her ongoing intensive assistance program until she'd received at least six months to implement the program. Braaksma's teaching contract incorporated the school district's "official school policies," and the school district concedes that its written "Intensive Assistance Policy" (with its six-month minimum duration) was thus incorporated into the teaching contract.

Despite the school district's own policy language, the district court held that the broad language in Iowa Code section 279.27(1) permits a school district to discharge a teacher "at any time during the contract year for just cause" and thus trumps any right to continue the intensive assistance program provided in chapter 284 or Braaksma's teaching contract. The school district presses this same argument on appeal.

Yet the school district's argument splinters against the repeated mandatory language in section 284.8: for instance, an evaluator "*shall* . . .

recommend" an intensive assistance program when a teacher fails to meet a school district's expectations under the Iowa teaching standards; a school district "*shall . . .* offer" an intensive assistance program to the teacher; a teacher "*shall* participate" in the program. Iowa Code § 284.8(2)–(3) (emphases added). Section 284.8 is not, as the school district argues, subsumed by the grant of just-cause termination in 279.27. When a specific provision in a statute appears to be in conflict with a general provision, our canons of construction suggest that the specific provision is treated as an exception to the general provision. *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012).

In this instance, section 284.8(4) specifies the options school districts possess in addressing a teacher's performance problems at the conclusion of the intensive assistance program:

> Following a teacher's participation in an intensive assistance program, the teacher shall be reevaluated to determine whether the teacher successfully completed the intensive assistance program and is meeting district expectations under the applicable Iowa teaching standards or criteria. If the teacher did not successfully complete the intensive assistance program or continues not to meet the applicable Iowa teaching standards or criteria, the board may do any of the following:
>
> *a.* Terminate the teacher's contract immediately pursuant to section 279.27.
>
> *b.* Terminate the teacher's contract at the end of the school year pursuant to section 279.15.
>
> *c.* Continue the teacher's contract for a period not to exceed one year. However, the contract shall not be renewed and shall not be subject to section 279.15.

Iowa Code § 284.8(4).

Section 284.8 thus limits a school district's ability to terminate a teacher's contract in a way that adjusts the broad right of districts to terminate "at any time" in section 279.27.[1] The beginning clause that introduces section 284.8(4) —"*Following* a teacher's participation in an intensive assistance program"— indicates that the school district's power to dispense with a teacher failing to meet the teaching standards arises only *after* the teacher is given an opportunity to participate in the intensive assistance program. *Id.* (emphasis added). To read this language as the school district urges would require us to add words to the statute that the legislature didn't: "Following *or at any time during* a teacher's participation in an intensive assistance program, . . . ." We aren't permitted to supply words in a statute that the legislature chose not to include. As Justice Brandeis put the point: "To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

The school district's own policy affords any teacher not meeting the district's expectations under the Iowa teaching standards a minimum of six months to participate in an intensive assistance program. That policy is incorporated into the school district's contract with teachers. No matter how the six-month period is calculated—whether using the full calendar period from April 25 to October 11 or some shorter period of actual student instruction that

---

[1]That the legislature was cognizant of a school district's usual termination rights when it drafted section 284.8(4) is made obvious by the legislature's explicit mention of section 279.27 in describing the school district's post-intensive-assistance-plan options in section 284.8(4)(*a*). *See* Iowa Code § 284.8(4)(*a*) (permitting the district to "[t]erminate the teacher's contract immediately pursuant to section 279.27").

doesn't include summer break—it's undisputed that Braaksma never received six months to participate in the intensive assistance program.

At oral argument, the school district focused on a slightly different rationale to justify Braaksma's firing: that the grounds for the termination stemmed from Braaksma's performance deficiencies while teaching a higher-level Spanish class in the new school year (Spanish II) and thus concerned problems not addressed in Braaksma's intensive assistance program from the *prior* school year. Because these were different classes and thus different performance problems, goes the school district's argument, they provided an independent basis for the school district to terminate her contract notwithstanding an ongoing intensive assistance program.

As an initial matter, we struggle to find this argument addressed directly in the district court's written decision or the school district's appeal brief. As an appellate court tasked with correcting a district court's alleged errors of law in the proceeding below, *Bd. of Ed. of Ft. Madison Cmty. Sch. Dist. v. Youel*, 282 N.W.2d 677, 680 (Iowa 1979), we ordinarily will not address arguments on appeal that were neither raised nor decided in the district court, *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). But even squinting to make out such an argument, the record before us offers little to convince us that the original performance concerns raised about Braaksma's teaching—which led to the intensive assistance program in April 2019—were materially different than the performance concerns raised in October. The notice of termination's reference to "Spanish II" simply states: "Students in Spanish II have not received

appropriate instruction." The evidence on that point involved the same types of performance concerns that were raised during the prior school year. It is (to steal a phrase) "performance" all the way down.

We thus hold that the school district violated the law when it terminated Braaksma's contract for the same performance reasons addressed in her ongoing intensive assistance program before Braaksma had been given the requisite period to participate in the program. This does *not* mean, of course, that a school district may never immediately terminate the contract of a teacher while an intensive assistance program is in progress. Participation in an intensive assistance program doesn't immunize a teacher from firing. One can conjure many actions that might justify a teacher's immediate firing—assaulting a student, embezzling funds, falsifying student grades, among others—even if a teacher is currently participating in an intensive assistance program. But this case simply doesn't present that fact pattern. A teacher's insubordination might also constitute just cause to immediately terminate the contract of a teacher notwithstanding an ongoing intensive assistance program, but the superintendent's notice of termination doesn't include insubordination among the grounds. Our review on appeal is "limited to the specific reasons stated in the superintendent's notice of recommendation of termination." Iowa Code § 279.16.

### III.

"The court shall reverse, modify, or grant any other appropriate equitable or legal relief from the board decision . . . if substantial rights of the petitioner

have been prejudiced because the action" violates "statutory provisions" or "a board rule or policy or contract." *Id.* § 279.18(2)(*a*), (*c*). We thus reverse the school board's decision and the district court's ruling, affirm the opinion of the court of appeals, order Braaksma reinstated to her former position under the terms of her teaching contract, and remand to the district court for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except May, J., who takes no part.